Argued and submitted May 4; decision of Court of Appeals affirmed in part and
reversed in part, juvenile court's order denying motion to dismiss dependency
petitions affirmed, and juvenile court's dependency judgments vacated in part
September 17, 2021

In the Matter of V. B. N. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Respondent on Review,*

*v.*

J. S.,
*Petitioner on Review,*
*and*

R. N.,
*Appellant.*

(CC 18JU03215)
(CA A171589 (Control), A171591)

In the Matter of M. R. R. N. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Respondent on Review,*

*v.*

J. S.,
*Petitioner on Review,*
*and*

R. N.,
*Appellant.*

(CC 18JU09064)
(CA A171590, A171592)

(SC S068044)

495 P3d 1245

Parents, residents of Washington, were living temporarily in Oregon when the
Department of Human Services removed their children from their care. A juve-
nile court, exercising temporary emergency jurisdiction under ORS 109.751(2),
entered shelter orders, and, later, dependency judgments making the children
wards of the court, placing them in foster care, and ordering parents to take spec-
ified actions to regain custody of them. Parents moved to dismiss the dependency
judgments on the ground that the juvenile court had authority to enter shelter

orders but lacked authority to enter dependency judgments. *Held*: The juvenile court had authority to enter dependency judgments making the children wards of the court and continuing their placement in foster care, but the court lacked authority to order actions that were not necessary to protect the children in an emergency, such as requiring the parents to participate in services or take other specified actions to regain custody of the children.

The decision of the Court of Appeals is affirmed in part and reversed in part. The juvenile court's order denying the motion to dismiss the dependency petitions is affirmed, and the juvenile court's dependency judgments are vacated in part.

En Banc

On review from the Court of Appeals.*

Tiffany Keast, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the brief was Shannon Storey, Chief Defender, Juvenile Appellate Section.

Inge D. Wells, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

NAKAMOTO, J.

The decision of the Court of Appeals is affirmed in part and reversed in part. The juvenile court's order denying the motion to dismiss the dependency petitions is affirmed, and the juvenile court's dependency judgments are vacated in part.

_____

* On appeal from Sherman County Circuit Court, John A. Wolf, Judge. 303 Or App 324, 464 P3d 157 (2020).

**NAKAMOTO, J.**

These juvenile dependency cases raise the issue of the scope of a juvenile court's temporary emergency jurisdiction under ORS 109.751, which is part of Oregon's enactment of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). As we will explain in more detail later in this opinion, the UCCJEA sets out rules for determining jurisdiction in child custody cases involving multiple states. In this case, parents were residents of Washington who were living temporarily at a motel in Oregon. The juvenile court asserted temporary emergency jurisdiction over their 15-month-old son after police, investigating the death of his infant brother, found him living in squalid and dangerous conditions in the motel room. The court later entered several dependency judgments concerning that child as well as another child later born to parents in Washington.

Parents challenged the juvenile court's authority under ORS 109.751 or any other provision of the UCCJEA to issue dependency judgments making their two children wards of the court in Oregon. In particular, parents moved to dismiss dependency petitions filed by Department of Human Services (DHS) in the juvenile court on the ground that the juvenile court had authority under ORS 109.751 only to enter shelter orders and did not have subject matter jurisdiction under that statute or any other provision of the UCCJEA to adjudicate dependency petitions for children from another state who are temporarily in Oregon. The juvenile court denied the motion.

On parents' appeals, the Court of Appeals affirmed the juvenile court, holding that the juvenile court had properly exercised temporary emergency jurisdiction as to both children under ORS 109.751 and did not exceed its temporary emergency jurisdiction when it issued dependency judgments as to the children. *Dept. of Human Services v. J. S.*, 303 Or App 324, 464 P3d 157 (2020). Only mother filed a petition for review, which we allowed. We affirm the juvenile court's denial of mother's motions to dismiss the dependency petitions, because the juvenile court had temporary emergency jurisdiction under the UCCJEA to enter dependency judgments as to the children. However, the juvenile

court exceeded the scope of its temporary emergency jurisdiction, and therefore we vacate certain parts of the dependency judgments. As a result, we affirm in part and reverse in part the Court of Appeals decision.

## I.  BACKGROUND

The following facts are not in dispute. Before February 2018, mother and father lived in Goldendale, Washington. They had two children: V, who was born in January 2017, and K, who was born in December 2017. Both children were born in Washington. In February 2018, parents lost their housing in Goldendale and moved to a motel in Rufus, Oregon, while they tried to obtain new housing in Goldendale.

Both mother and father regularly used methamphetamine, and, as father testified before the juvenile court, father used methamphetamine in the motel bathroom "almost every day." On April 10, 2018, mother drove to Goldendale, ostensibly to do some grocery shopping. She did not return home that evening; she left the children in the motel room overnight with father. Mother later admitted that she had used methamphetamine with a friend that night.

The next morning, April 11, when father awoke, he discovered that K, who had been sleeping in bed with him, had died. When the police arrived at the motel room, they arrested father on outstanding warrants. Shortly thereafter, police executed a search warrant of the room. Police observed soiled diapers and garbage on the floor. On the nightstand next to the bed, within reach of the children, were several items of drug paraphernalia, as well as marijuana and an open folding-blade knife. In a duffel bag next to the bed, also within reach of the children, was a small zip-lock bag containing a substance resembling methamphetamine. The room also contained a portable crib, where V slept. It was thick with bedding, and, as the officers peeled back the layers, the bed emanated a strong odor of sour milk, urine, and rotten food. In the bed were bits of rotting food, as well as candy, a watch cell battery, and other choking hazards.

DHS removed V and took him to a hospital. He tested negative for illicit substances. He was diagnosed as having a yeast infection in his genital and anal areas. Hospital staff also noticed that V was extremely sensitive to touch and developed red marks on his skin when they picked him up, which they attributed to a lack of consistent touch.

After an autopsy, K's death was ruled an accident. However, a toxicology screen performed as part of the autopsy established that K had methamphetamine in his system.

On April 12, DHS filed a dependency petition for V in the Sherman County Circuit Court, alleging on multiple grounds that V's condition or circumstances endangered his welfare, as provided in ORS 419B.100(1)(c). DHS also alleged for purposes of the UCCJEA that, during "the previous five years," V had lived in Goldendale and in Rufus, but it did not mention how long the child had lived in either location. The juvenile court entered a shelter order the same day. In its shelter order, the juvenile court asserted jurisdiction under the UCCJEA, ORS 109.701 to 109.834.

Not later than 60 days after the dependency petition was filed, subject to extension for good cause, the juvenile court was required by statute to hold a hearing on the dependency petition to decide whether V was within its jurisdiction under ORS 419B.100. ORS 419B.305(1). And, under ORS 419B.328(1), if the juvenile court decides after the hearing that the child is within its jurisdiction under ORS 419B.100, the court "shall" make the child a ward of the court. Accordingly, on August 24, 2018, the juvenile court conducted a jurisdictional hearing. Neither parent objected to the hearing taking place for lack of subject matter jurisdiction.

At the conclusion of the hearing, the juvenile court entered a judgment of jurisdiction. The court determined that it had "jurisdiction under the UCCJEA to make a child custody determination" and that V was within the jurisdiction of the court under ORS 419B.100(1)(c). The judgment made V a ward of the court and provided for his placement,

including committing V to the legal custody of DHS, continuing his placement in foster care, and ordering parents to take specified actions to regain custody of V. The bases for the court's assertion of dependency jurisdiction were, among other things, mother's admissions that her substance abuse and mental health problems interfered with her ability to safely parent V and that she needed assistance from the state to safely and adequately parent V, and father's admissions that his substance abuse problems, criminal activities and incarceration, and chaotic lifestyle interfered with his ability to parent V.

Meanwhile, both parents had returned to Washington. Mother moved back to Goldendale, having found housing there, and father was undergoing drug and alcohol treatment in Chehalis, Washington.

On November 7, 2018, mother gave birth to M in a hospital in Washington. M was born seven weeks prematurely, she had a low birth weight, and tests showed that she had been exposed to amphetamines, methamphetamine, and ecstasy in utero. M's meconium tested positive for marijuana and amphetamines. On the day M was born, because of medical concerns, she was transferred to the neonatal intensive care unit at Doernbecher Children's Hospital in Portland. That day, DHS removed M from mother's care and filed a dependency petition in Sherman County, alleging grounds for jurisdiction over M under ORS 419B.100(1)(c).

The next day, November 8, the juvenile court entered a shelter order in which it asserted temporary emergency jurisdiction under ORS 109.751. That statute provides, in part:

"(1)  A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

"(2)   If there is no previous child custody determination that is entitled to be enforced under ORS 109.701 to 109.834 [(the UCCJEA)] and a child custody proceeding has not been commenced in a court of a state having jurisdiction

under ORS 109.741 to 109.747[, providing grounds for child custody jurisdiction], a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under ORS 109.741 to 109.747. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under ORS 109.741 to 109.747, a child custody determination made under this section becomes a final determination if the determination so provides and this state becomes the home state of the child."

The bases for the court's ruling were that M was present in the state, temporary emergency jurisdiction was necessary in an emergency to protect her from mistreatment or abuse, no child custody determination concerning her was entitled to be enforced, and no child custody proceeding concerning her was then pending in another state.

Also on November 8, the juvenile court entered another jurisdictional judgment concerning V. In that judgment, the court elaborated on the grounds for exercising jurisdiction under ORS 109.751(2) as to V. The court recited the same reasons as the court had described in asserting temporary emergency jurisdiction over M, but it added a finding that "the State of Washington's Child Protective Services has declined to initiate a dependency case in Washington."

In January 2019, as required under ORS 419B.305, the court conducted a jurisdictional hearing on the dependency petition as to M. At the conclusion of the hearing, the court entered a jurisdictional judgment making M a ward of the court and committing her to the legal custody of DHS, on the same bases as it had with V, and ordering parents to take specified actions to regain custody of her. In that order, the juvenile court again ruled that it was exercising temporary emergency jurisdiction under ORS 109.751 because it was necessary to protect M, who was subject to or threatened with mistreatment or abuse, and there was no prior child custody determination pertaining to her in another state. The juvenile court added that the court's custody determination in the order in question would become final if Oregon became M's home state.

Mother, but not father, appealed that January 2019 jurisdictional judgment as to M, arguing that the juvenile court lacked subject matter jurisdiction under ORS 109.751 or any other provision of the UCCJEA to enter dependency judgments. In August 2019, the Court of Appeals affirmed without opinion the juvenile court's January 2019 jurisdictional judgment as to M. *Dept. of Human Services v. J. S.*, 299 Or App 123, 449 P3d 577 (2019).

In May 2019, before the Court of Appeals decided the appeal of the juvenile court's dependency judgment as to M, both mother and father filed motions in the juvenile court to dismiss the dependency petitions for both V and M. The court held hearings on those motions in May and June and, in an order concerning both cases, ultimately reaffirmed its rulings that it had properly exercised temporary emergency jurisdiction over both children under ORS 109.751 when it entered the dependency judgments, because the emergency continued to exist at that point, and, therefore, it had had authority under that statute to enter the dependency judgments. Mother and father appealed the juvenile court's ruling to the Court of Appeals, which affirmed. As noted, mother seeks review of the Court of Appeals' determination that the juvenile court had authority under ORS 109.751 to enter dependency judgments concerning V and M.

## II.   ANALYSIS

### A.   *UCCJEA Overview*

Before we begin our analysis of the juvenile court's temporary emergency jurisdiction under ORS 109.751, which codifies section 204 of the UCCJEA, some background pertaining to the UCCJEA is helpful. The Uniform Child Custody Jurisdiction and Enforcement Act (1997) is a uniform act governing child custody proceedings and child custody determinations when multiple states are implicated. Almost every state has adopted the UCCJEA. Oregon adopted the UCCJEA in 1999, Or Laws 1999, ch 649, and it is codified at ORS 109.701 to 109.834. Oregon's juvenile code provides that the juvenile court's subject matter jurisdiction is subject to the UCCJEA. ORS 419B.803(2) ("Juvenile court jurisdiction is subject to ORS 109.701 to 109.834.").

When a statute is based on a uniform act, the commentary to the uniform act is useful to our understanding of the law. *Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 363 n 2, 811 P2d 627 (1991). The commentary to the UCCJEA explains that the purposes of the UCCJEA are, among other things, to avoid jurisdictional competition and conflict with other states' courts in child custody matters, to promote cooperation with the courts of other states so that custody decrees are rendered in the state that can best decide the case in the interest of the child, to avoid relitigating other states' custody decisions in this state, and to facilitate the enforcement of other states' custody decrees. Uniform Child Custody Jurisdiction and Enforcement Act § 101 comment, 9 ULA 649, 657 (1999).

To support those purposes, a foundational principle of the UCCJEA is that the jurisdiction of the child's "home state" to make initial child custody determinations takes priority over other jurisdictional bases for making child custody determinations. UCCJEA § 201 comment 1, 9 ULA at 672. The child's "home state" is

> "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, 'home state' means the state in which the child lived from birth with any of the persons mentioned. Any temporary absence of any of the mentioned persons is part of the period."

ORS 109.704(7). A "child custody determination" is defined in section 102 of the UCCJEA, codified at ORS 109.704(4), as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, parenting time or visitation with respect to a child." The prefatory note to the UCCJEA describes that definition as "sweeping." UCCJEA, 9 ULA at 650. This case involves initial child custody determinations concerning the children. An "initial determination" is defined as "the first child custody determination concerning a particular child." ORS 109.704(8).

Section 201 of the UCCJEA, codified at ORS 109.741, sets out the permissible bases for an Oregon court to exercise jurisdiction to make an initial child custody determination. Under ORS 109.741, an Oregon court deciding whether it has jurisdiction to make an initial custody determination may assert nonemergency jurisdiction based on only four alternate paths. ORS 109.741(1) (setting out the four bases); ORS 109.741(2) (stating that subsection (1) is "the exclusive jurisdictional basis for making a child custody determination by a court of this state"); accord *In re S.A.G.*, 487 P3d 677, 682 (Colo 2021). The first path occurs when Oregon is the child's home state. *See* ORS 109.741(1)(a) (Oregon has jurisdiction if it was the child's home state at "the commencement of the proceeding"). If Oregon is not the child's home state, then the court must determine if it is permissible to proceed along one of the other three pathways to jurisdiction set out in ORS 109.741, which the court in *S.A.G.* describes as "significant-connection," "more-appropriate-forum," and "last-resort" jurisdiction. *S.A.G.*, 487 P3d at 682-83. In general terms, those three alternative paths require the court to consider whether another state would have initial child custody jurisdiction and has declined to exercise it and, in some instances, to evaluate Oregon's connections to the parties and the proceeding. *See* ORS 109.741(1)(b), (c), (d).

In general, in other words, under ORS 109.741, if a child's home state is not Oregon, then an Oregon court may not make an initial custody determination unless the home state has declined to exercise jurisdiction. However, ORS 109.741(1) expressly provides an exception to that statutory scheme that is applicable in emergencies: *"Except as otherwise provided in ORS 109.751*, a court of this state has jurisdiction to make an initial custody determination only if" one of the four jurisdictional grounds are met. (Emphasis added.) That exception, ORS 109.751, codifies section 204 of the UCCJEA concerning temporary emergency jurisdiction. Thus, by its terms, ORS 109.741(1) permits a court that does not have initial child custody jurisdiction to make a child custody determination if the court has temporary emergency jurisdiction under ORS 109.751.

B.   *Temporary Emergency Jurisdiction Under the UCCJEA*

It is inherent in the concept of "temporary emergency jurisdiction" that any orders of a court exercising jurisdiction under ORS 109.751 must be temporary. That concept is confirmed in the UCCJEA commentary:

> "[A] custody determination made under the emergency jurisdiction provisions of this section is a temporary order. The purpose of the order is to protect the child until the State that has [initial child custody jurisdiction] enters an order."

UCCJEA § 204 comment, 9 ULA at 677. The commentary to UCCJEA section 201, governing initial child custody jurisdiction, explains that a court exercising temporary emergency jurisdiction generally may not enter a "permanent order." UCCJEA § 201 comment, 9 ULA at 673. Indeed, the separate section governing temporary emergency jurisdiction was added to the UCCJEA

> "to make it clear that *the power to protect a child in crisis does not include the power to enter a permanent order for that child* except as provided by that section."

*Id.* (emphasis added). Further, the commentary emphasizes that the child custody determinations that a court makes through emergency jurisdiction are limited to situations where the child (or the child's sibling or parent) is subjected to or threatened with abuse or mistreatment.

The prefatory note to the UCCJEA explains that section 204 of the UCCJEA addresses the temporary basis of emergency jurisdiction and the interplay between domestic violence statutes and emergency jurisdiction. UCCJEA, 9 ULA at 650. Temporary emergency jurisdiction is "extraordinary jurisdiction" that is intended to enable a court "to protect the child even though it can claim neither home [s]tate nor significant connection jurisdiction." UCCJEA § 204 comment, 9 ULA at 677. And the commentary further states that "a custody determination made under the emergency jurisdiction provisions of this section is a temporary order." *Id.*

Subsection (2) of ORS 109.751 describes the duration of the temporary custody determinations that the juvenile court made during the emergency in this case:

"If there is no previous child custody determination that is entitled to be enforced under ORS 109.701 to 109.834 and a child custody proceeding has not been commenced in a court of a state having jurisdiction under ORS 109.741 to 109.747 [initial child custody jurisdiction], *a child custody determination made under this section remains in effect until an order is obtained from a court of a state having* [*initial or continuing child custody jurisdiction*]. If a child custody proceeding has not been or is not commenced in a court of a state having [initial child custody jurisdiction], a child custody determination made under this section becomes a final determination if the determination so provides and this state becomes the home state of the child."

ORS 109.751(2) (emphasis added). The plain meaning of the emphasized text in ORS 109.751(2) is that a temporary child custody determination made pursuant to the juvenile court's temporary emergency jurisdiction will remain in effect until a court in the child's home state or a state with initial child custody jurisdiction enters an order. ORS 109.751(2). That reading comports with the comment pertaining to that part of section 204 of the UCCJEA: The purpose of an order entered under the court's temporary emergency jurisdiction "is to protect the child until the State that has jurisdiction under [ORS 109.741 to 109.747, *i.e.*, the state with a basis for initial child custody jurisdiction,] enters an order." UCCJEA § 204 comment, 9 ULA at 677.

## C.   *Mother's Challenges to the Dependency Judgments*

In this case, as discussed, the juvenile court entered both shelter orders and dependency judgments concerning V and M, citing as authority to do so its temporary emergency jurisdiction under ORS 109.751. The crux of the challenge mother raises is to the scope of the juvenile court's authority to adjudicate a dependency petition and to enter a dependency judgment while exercising temporary emergency jurisdiction.

To resolve that issue, we must interpret ORS 109.751 and other relevant provisions of the UCCJEA as

codified in Oregon at ORS 109.701 to 109.834, applying the methodology described in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). That is, we consider the text and context of the statutes in light of any legislative history that appears useful to the court's analysis. The context of a uniform act includes its official commentary. *Schultz v. Bank of the West*, 325 Or 81, 87, 934 P2d 421 (1997). Moreover, under ORS 109.831, we are directed to consider "the need to promote uniformity of the law with respect to its subject matter among states that enact it." Accordingly, we consider "instructive case law from other uniform-law jurisdictions." *Western Helicopter Services*, 311 Or at 363 n 2.

We begin with ORS 109.751, which provides:

"(1)  A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

"(2)  If there is no previous child custody determination that is entitled to be enforced under ORS 109.701 to 109.834 and a child custody proceeding has not been commenced in a court of a state having [initial child custody jurisdiction], a child custody determination made under this section remains in effect until an order is obtained from a court of a state having [initial child custody jurisdiction]. If a child custody proceeding has not been or is not commenced in a court of a state having [initial child custody jurisdiction], a child custody determination made under this section becomes a final determination if the determination so provides and this state becomes the home state of the child.

"(3)  If there is a previous child custody determination that is entitled to be enforced under ORS 109.701 to 109.834, or a child custody proceeding has been commenced in a court of a state having [initial child custody jurisdiction], any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having [initial child custody jurisdiction]. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

"(4)	A court of this state that has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having [initial child custody jurisdiction], shall immediately communicate with the other court. A court of this state that is exercising [initial child custody jurisdiction], upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section, shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child and determine a period for the duration of the temporary order."

Mother does not dispute that the juvenile court had authority to enter shelter orders for her children. Mother did not contend in the juvenile court that V or M were not "subject to or threatened with mistreatment or abuse," a trigger for the court's temporary emergency jurisdiction. And in rejecting mother's and father's motions to dismiss the dependency petitions, the juvenile court found that parents had effectively admitted at the jurisdictional hearings that the children were subject to or threatened with mistreatment or abuse.

But mother has argued throughout this proceeding that the juvenile court lacks jurisdiction to enter dependency judgments. That is so, she argues, for three reasons. First, she contends that ORS 109.741, which governs initial child custody jurisdiction, bars the juvenile court from issuing a dependency judgment when the child's home state is not Oregon and the Oregon juvenile court has not communicated with a court of the home state and obtained an order from the home state court declining jurisdiction. Second, she argues that dependency judgments are not "temporary" within the meaning of that word in the UCCJEA. And third, mother contends that the dependency judgments were not necessary to protect the children. As we will explain, we conclude that the juvenile court was not required to communicate with a court in Washington before entering a dependency judgment, and, considering the statutory framework for juvenile dependency cases in Oregon as context, the scope of "temporary" orders—as opposed to permanent

child custody determinations—permissible under the provision for temporary emergency jurisdiction in the UCCJEA is not limited to shelter orders and may encompass jurisdictional judgments focused on the placement of the child being protected.

At the outset, we reject mother's argument that temporary emergency jurisdiction does not supersede the otherwise applicable bar to jurisdiction in Oregon under ORS 109.741. Mother is correct that ORS 109.741 gives the home state priority over other states in making initial custody determinations, and that, in general, a state other than the child's home state can make an initial custody determination only if the home state declines jurisdiction. ORS 109.741(1)(c) ("[A] court of this state has jurisdiction to make an initial child custody determination only if *** [a]ll courts having jurisdiction under subsection (1)(a) or (b) of this section have declined to exercise jurisdiction[.]"). But ORS 109.741(1) plainly recognizes that ORS 109.751, providing for temporary emergency jurisdiction, is an exception to that general rule. As we have explained, the rules set out in ORS 109.741 apply "except as otherwise provided in ORS 109.751," that is, except in cases of emergency.

The predicates for temporary emergency jurisdiction under ORS 109.751(1) were met when the juvenile court entered shelter orders for V and M. The children were present in the state and the court's exercise of its jurisdiction was necessary to protect them in an emergency from actual or threatened mistreatment. In addition, mother did not dispute, either in the Court of Appeals or in this court, that the emergency continued to exist at the time that the dependency judgments were entered and when the juvenile court denied the parents' motions to dismiss in June 2019; mother admitted that her substance abuse and mental health issues interfered with her ability to safely parent the children, and, in May 2019, mother and father were incarcerated and not available to parent the children. Therefore, ORS 109.751, and not ORS 109.741, applies in this case.

Relatedly, mother also argues that, under ORS 109.741(1), the juvenile court was required to communicate with the Washington court and to obtain an order from

that court declining jurisdiction before making a child custody determination other than a shelter order. But ORS 109.751, and not ORS 109.741, applies in this case. And no such requirement is present in ORS 109.751(2). Indeed, ORS 109.751(2) does not direct any court or party to contact another state court. Rather, that statute uses the passive voice: "a child custody determination made under this section remains in effect *until an order is obtained* from a court of a state having [initial child custody jurisdiction]." ORS 109.751(2) (emphasis added).

In notable contrast, subsections (3) and (4) of ORS 109.751 specifically address who is to contact the home state court in particular circumstances. Subsection (3) applies when a previous child custody determination is entitled to be enforced or a proceeding has been commenced in a state with initial child custody jurisdiction. In such a case, it is up to the party who sought the order in the Oregon court to contact the court with home state jurisdiction and to obtain an order from it declining or assuming jurisdiction: "any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having [initial or continuing child custody jurisdiction]." ORS 109.751(3); UCCJEA § 204 comment, 9 ULA at 677 (this subsection "allows the temporary order to remain in effect only so long as is necessary for the person who obtained the determination under this section to present a case and obtain an order from the State with jurisdiction under Sections 201-203"). And subsection (4) applies when another state is exercising initial child custody jurisdiction and the court in this state is exercising temporary emergency jurisdiction. In that circumstance, the statute expressly directs the Oregon court to contact the home state court: the Oregon court "shall immediately communicate with the other court." ORS 109.751(4).

We infer from the legislature's choice to specifically require a party (in subsection (3)) and the court (in subsection (4)) to contact the home state court, but not to do either of those things in ORS 109.751(2), that the legislature intended not to require such contact when there

is no existing child custody order or ongoing child custody proceeding in another state. Under ORS 109.751(2), then, a child custody determination made pursuant to the court's temporary emergency jurisdiction continues in force until someone—anyone—obtains an order of the home state court declining or assuming jurisdiction.

Turning to the question whether ORS 109.751(2) authorizes a court exercising temporary emergency jurisdiction to enter dependency judgments, we begin by examining the text of the provision, as there is "no more persuasive evidence of the intent of the legislature" that enacted the statute. *Gaines*, 346 Or at 171. We first observe that the text of ORS 109.751 does not contain a provision directly limiting the types of child custody determinations that can be made in the exercise of temporary emergency jurisdiction under the UCCJEA.

The first sentence of ORS 109.751(2) refers to "a child custody determination made under this section." It provides that "a child custody determination made under this section remains in effect until an order is obtained from a court of a state" having initial child custody jurisdiction. That reference thus assumes that a juvenile court with temporary emergency jurisdiction will have made a "child custody determination." A "child custody determination," in turn, is defined as "a judgment or other order of a court providing for the legal custody, physical custody, parenting time or visitation with respect to a child." ORS 109.704(3). As we have stated, the prefatory note to the UCCJEA states that that definition is intended to be "sweeping."

A dependency judgment falls within the statutory definition of a "child custody determination," because it authorizes the juvenile court to make provisions for the legal and physical custody of a child. A wardship determination arising out of a dependency petition provides for the legal custody of a child. ORS 419B.809(5) (when a dependency petition is filed, the juvenile court may "make an order providing for temporary custody" of a child). When a child is taken into protective custody, as here, the order for temporary custody is included in a shelter order, and it continues until the dependency petition is adjudicated. ORS

419B.150 (governing authorization for protective custody); ORS 419B.185 (authorizing the court to order that a child be "continued in care"). When the juvenile court finds a child to be within its jurisdiction, it "shall" make the child a ward of the court. ORS 419B.328(1). As an incident of that wardship, the court may place the ward under its protective supervision, ORS 419B.331, or it may commit the child to the legal custody of DHS, ORS 419B.337(1).

Nothing in the text of ORS 109.751 limits the authority of a court exercising temporary emergency jurisdiction to entry of only shelter orders or some similar category of child custody determinations. Moreover, mother has pointed to nothing elsewhere in the UCCJEA as enacted in Oregon, or its commentary, that distinguishes dependency judgments from shelter orders in child custody proceedings. Thus, the text suggests that the juvenile court has authority under ORS 109.751(2) to enter dependency judgments, which are judgments that provide for legal and physical custody of children.

As noted, mother further argues that the dependency judgments in this case were improperly entered because a juvenile court exercising temporary emergency jurisdiction under ORS 109.751(2) is authorized to enter only temporary orders that are necessary to protect children until the emergency giving rise to the court's jurisdiction dissipates. She contends that the dependency judgments that the juvenile court entered in this case were not temporary and contained provisions that are not necessary to protect the children during an emergency.

We have already explained that ORS 109.751 gives the juvenile court authority to enter only temporary orders. In accordance with that understanding, courts around the country have held that a court exercising temporary emergency jurisdiction does not have authority to enter permanent or final orders. The clearest example of a permanent order is a judgment terminating parental rights. For example, in *S.A.G.*, 487 P3d at 684, the Colorado Supreme Court recently held that the reference to "final determinations" in the Colorado statute giving the court temporary emergency

jurisdiction "does not permit courts to terminate parental rights." *See also In re Gino C*., 224 Cal App 4th 959, 964, 169 Cal Rptr 3d 193, 197 (2014) (lower court erred in ruling that the court's temporary emergency jurisdiction automatically converted to permanent jurisdiction because the parents had not initiated a child custody proceeding in the child's home state); *In re ALH*, 160 Vt 410, 425, 630 A2d 1288, 1291 (1993) (emergency jurisdiction confers only power to issue temporary protective orders, not permanent custody orders). But adjudication of the dependency petition, resulting in a dependency judgment, is the next step after a shelter order and, unlike a judgment terminating parental rights, is not permanent.

Mother does not elaborate on her contention that dependency judgments are not temporary, *i.e.*, that they are prohibited permanent judgments. As a statutory matter, however, even in nonemergency situations, dependency judgments in Oregon are time-limited, or temporary. As mother points out, "temporary" means "existing or continuing for a limited time[.]" *Webster's Third New Int'l Dictionary* 2353 (unabridged ed 2002). Under ORS 419B.328, orders making a child a ward of the court—dependency judgments—continue for a limited time, ending when one of a discrete list of enumerated events occurs:

"(a)   The court dismisses the petition concerning the ward;

"(b)   The court transfers jurisdiction over the ward as provided in ORS 419B.127, 419B.130 and 419B.132;

"(c)   The court enters an order terminating the wardship;

"(d)   A judgment of adoption of the ward is entered by a court of competent jurisdiction; or

"(e)   The ward becomes 21 years of age."

In cases in which the juvenile court makes a child a ward of the court in the exercise of temporary emergency jurisdiction, ORS 109.751(2) effectively adds another event to that list: The child custody determination "remains in effect until an order is obtained from a court of a state" having initial child custody jurisdiction.

The fact that a dependency judgment is temporary, however, does not necessarily mean that it is short-lived. "Even though emergency jurisdiction ordinarily is intended to be short term and limited, the juvenile court may continue to exercise its authority as long as the risk of harm creating the emergency is ongoing." *In re Angel L.*, 159 Cal App 4th 1127, 1139, 72 Cal Rptr 3d 88, 96 (2008); *In re K.L.B.*, 56 Kan App 2d 429, 443, 431 P3d 883, 893 (2018) (noting that if no order was obtained from the children's home state of Kentucky, the Kansas court's jurisdiction would have continued). In this case, we conclude that the dependency judgments were "temporary" within the meaning of that word in ORS 109.751 and the UCCJEA.

Finally, mother argues that the dependency judgments, or parts of them, were not "necessary in an emergency" to protect the children. Mother has not disputed that, at the time that the dependency judgments were entered, the need for the juvenile court's extraordinary jurisdiction persisted: Mother had admitted that her substance abuse and mental health issues interfered with her ability to parent the children, and she did not contest the juvenile court's determinations that V and M were threatened with mistreatment as a result. Moreover, as of the time that the juvenile court entered the dependency judgments, she had not taken steps to address those issues. Thus, the "emergency" giving the court temporary emergency jurisdiction was ongoing, and the parts of the judgments making the children wards of the state and continuing their placement in foster care were necessary to protect the children from those threats.

At the same time, we agree with mother that some parts of the dependency judgments were not "necessary in an emergency" to protect the children. Parts of the dependency judgments required mother and father to take specified actions to regain custody of the children. The list of required actions included engaging in drug treatment and parenting classes and undergoing mental health examinations. Mother does not elaborate on her argument that those requirements were not "necessary in an emergency" to protect the children, and the state does not respond to the

argument. However, we agree with mother that it is diffi-
cult to understand how those required actions are necessary
to protect the children's safety in an emergency. Their pur-
pose is to ensure that the children can be safely returned
to parents' care one day. They benefit the children in the
long term, insofar as, if parents were successful, the fam-
ily would be reunited. But they do not ensure the children's
safety in the short term. We therefore conclude that those
aspects of the dependency judgments exceeded the juvenile
court's temporary emergency jurisdiction.

One final matter bears mentioning. Although ORS
109.751(2) does not require the juvenile court to communicate
with the court in Washington and request it to decline or
to assume jurisdiction over M and V, nothing prevented the
court from doing so. Under ORS 109.731, the juvenile court
"may communicate with a court in another state concern-
ing a proceeding arising under ORS 109.701 to 109.834." In
certain cases governed by ORS 109.751(2), such as this one,
it may be desirable for the juvenile court to communicate
with the home state court. Without an order from a court
in Washington declining or assuming jurisdiction, to the
extent that Washington is the home state of the children,
the temporary dependency judgments entered by the juve-
nile court in Oregon can remain in effect, but the Oregon
court will lack authority to make a permanent placement for
the child. And, as we have stated, the record reflects that the
juvenile court in this case was notified that Washington's
child welfare agency refused to commence a child custody
proceeding concerning V and M in Washington. In the face
of such a refusal, as a practical matter—to prevent the chil-
dren from languishing in foster care, to prevent unneces-
sary disruption to the family, and to facilitate the possible
provision of services to aid parents in regaining custody of
their children—it may fall to the Oregon juvenile court to
communicate with a home state court to obtain an order
from that court declining jurisdiction. But ORS 109.751(2)
does not require that result or deprive the juvenile court of
jurisdiction to enter dependency judgments without that
communication in an emergency.

To summarize, the juvenile court properly exercised
temporary emergency jurisdiction over V and M in this case,

as it was necessary to protect them in an emergency. Under ORS 109.751(2), the juvenile court had authority to enter dependency judgments making the children wards of the court and continuing their placement in foster care, because the emergency continued to exist at the time that the court entered those orders. Accordingly, the juvenile court correctly denied mother's motions to dismiss the petitions. However, the court lacked authority to order actions that were not necessary to protect the children in an emergency. Accordingly, the portions of the dependency judgments requiring mother to engage in specified activities to regain custody of the children are vacated.

The decision of the Court of Appeals is affirmed in part and reversed in part. The juvenile court's order denying the motion to dismiss the dependency petitions is affirmed, and the juvenile court's dependency judgments are vacated in part.