670 December 17, 2025 No. 1083

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of

Gregory Allen PUHL,
*Petitioner-Appellant,*
*and*

Catherine Rose AXEL,
*Respondent-Respondent,*
*and*

Aaron James AXEL,
*Respondent-Respondent.*

Curry County Circuit Court
18DR24954; A185000 (Control)

In the Matter of

Aaron J. AXEL,
*Petitioner-Respondent,*
*and*

Catherine R. AXEL,
*Respondent-Respondent,*
*and*

Gregory Allen PUHL,
*Intervenor-Appellant.*

Curry County Circuit Court
17DR25833; A184999

Jesse C. Margolis, Judge.

Submitted September 11, 2025.

George W. Kelly filed the brief for appellant Gregory Allen Puhl.

Natalie C. Scott and The Scott Law Group filed the brief for respondent Aaron James Axel.

No appearance for respondent Catherine Rose Axel.

Before Joyce, Presiding Judge, Hellman, Judge, and Armstrong, Senior Judge.

HELLMAN, J.

July 2024 supplemental judgment vacated and remanded; September 2024 supplemental judgment vacated and remanded.

**HELLMAN, J.**

Father appeals from a supplemental judgment entered in July 2024 that modified an existing child custody determination regarding father's child L (July 2024 supplemental judgment) and a supplemental judgment entered in September 2024 awarding attorney fees and costs to stepfather (September 2024 supplemental judgment).[1] Father advances three assignments of error. In his first assignment, father argues that under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), the trial court lacked subject matter jurisdiction to enter the July 2024 supplemental judgment. Second, father assigns error to the trial court conditioning his parenting time on a therapist's written recommendation. Third, father contends that the trial court erred in awarding attorney fees and costs to stepfather in the September 2024 supplemental judgment.

As explained more fully below, we vacate and remand the July 2024 supplemental judgment for the trial court to evaluate whether, given the totality of the circumstances, father, mother, stepfather, and L no longer "presently resid[ed]" in Oregon in August 2022—the date that the motion to modify was filed—such that the trial court no longer had exclusive, continuing jurisdiction to modify its custody determination for L in the July 2024 supplemental judgment. *See Dept. of Human Services v. J. A. G.*, 344 Or App 511, 525, ___ P3d ___ (2025) (adopting "totality of the circumstances" test for determining whether the child, the child's parents, and any person acting as a parent "presently reside" in Oregon under ORS 109.744(1)(b)). If the trial court lacked exclusive, continuing jurisdiction in August 2022, then it must determine whether it nevertheless could modify L's custody determination because it had jurisdiction consistent with ORS 109.741. ORS 109.744(2). Because we vacate and remand the July 2024 supplemental judgment, which provided the basis for the trial court's award of attorney fees and costs, we also vacate and remand the September 2024 supplemental judgment.

---

[1] As set out more fully below, the trial court made its original determination of custody of L in its 2018 judgment dissolving mother and stepfather's marriage. Father later initiated a separate filiation proceeding, which was consolidated with the existing dissolution and custody proceeding. Accordingly, the trial court entered the July 2024 supplemental judgment in both proceedings.

These consolidated dissolution and filiation cases have involved an eight-year-long custody dispute across three states and between the three parties, who are L's three parental figures: L's biological father, mother, and stepfather. In January 2018, the trial court dissolved mother and stepfather's marriage via a General Judgment of Dissolution of Marriage (2018 dissolution judgment). In that general judgment, the trial court made the initial custody determination and awarded stepfather sole custody of L.

Father entered the legal picture in November 2018, when he filed a filiation proceeding to establish his biological and legal paternity of L. At that time, father also requested that the trial court set aside the 2018 dissolution judgment's custody and parenting time provisions and allow father to intervene in that matter as L's biological father. The trial court consolidated the dissolution proceeding and father's filiation proceeding in June 2019.

In 2019, stepfather relocated with L to Alaska on a temporary basis due to stepfather's National Guard service. The record indicates that, prior to their move, father, stepfather, and L all resided in Oregon, while mother maintained a residence in Washington.

In January 2020, the trial court entered its first modification of the existing custody determination (2020 supplemental judgment). The trial court recognized father as L's legal and biological father, retained stepfather as L's lawful custodian, and provided parenting time to father and mother. The 2020 supplemental judgment also anticipated that once stepfather's National Guard enlistment ended, stepfather and L would relocate to Washington. By April 2020, father and mother had also moved to Alaska to be closer to L.

In April 2021, stepfather filed a show-cause motion seeking modification of mother's parenting time. The motion was based in large part on allegations of mother's conduct that were reflected in multiple petitions for domestic violence protective orders against mother in Alaska.

In August 2021, mother requested that the trial court hold a UCCJEA conference with an Alaska court,

"regarding the proper jurisdiction" of stepfather's pending motion to modify custody of L. In November 2021, the trial court and the Alaska court held a UCCJEA conference, during which the Alaska court "indicated that [it] would assert jurisdiction if the Oregon court were to decline jurisdiction."[2] Afterwards, the trial court permitted the parties time to submit their respective arguments on the jurisdictional issue. On November 9, 2021, the trial court set forth its decision to exercise jurisdiction over stepfather's 2021 motion to modify via a letter issued to the Alaska court and the parties (November 2021 letter opinion). The November 2021 letter opinion states, in relevant part:

> "The purpose of this letter is to set forth the decision of this court regarding continuing jurisdiction in Oregon.
>
> "There are competing factors in this instance. *Of some importance is that the parties are all currently residing in Alaska* and that some factual information which may be relevant to any motion to modify is based on occurrences in Alaska. Because of that, at least in the near term, there could be some added convenience related to litigating these issues in Alaska. *On the other hand, the parties have known and agreed that [stepfather]'s stay in Alaska was to be limited in duration and is based on his military deployment. His attorney, who has lengthy involvement with this case, is an Oregon lawyer with an office in Curry County. There are counselors who have worked on this case in both Oregon and Alaska.*
>
> "The ability of a state such as Alaska or Oregon for that matter, to exercise temporary emergency jurisdiction when another state has exclusive, continuing jurisdiction is not alone a significant consideration in relation to the determination of whether a court should maintain its exclusive, continuing jurisdiction. It does not appear that there is any real likelihood that Alaska is a more convenient forum because of this court's ability to hear matters by remote video and/or in person and because of the temporary nature of at least one of the parties' residencies in Alaska.

---

[2] We observe that the trial courts in both Oregon and Alaska used the procedure available in ORS 109.761(1) to permit one court to make a request to another court to consider the appropriate forum for the child custody proceeding and appreciate those courts' proactive efforts to resolve the jurisdictional issues in this case. *See also* ORS 109.731(1) (providing that "[a] court of this state may communicate with a court in another state concerning a [UCCJEA] proceeding").

"Because it does not appear likely that there is any significantly greater convenience in litigating the motion to modify in Alaska as opposed to Oregon and because of the lengthy and complex nature of the litigation between these parties, this court will not decline jurisdiction. There is a pending motion to modify the judgment. The hearing on that motion shall remain as set absent further order of the court."

(Emphasis added.) The trial court then resolved stepfather's 2021 motion to modify custody of L via a supplemental judgment entered in July 2022 (2022 supplemental judgment).

In August 2022, stepfather filed a second show-cause motion, this time seeking modification of father's parenting time. Stepfather also requested attorney fees. In 2023, while the motion was pending, stepfather's National Guard enlistment ended, and he and L moved to Washington. By January 2024, mother had also relocated to Washington, while father remained in Alaska.

In July 2024, the trial court resolved stepfather's motion to modify the 2022 supplemental judgment. In part, the trial court ordered that father's parenting time with L "shall only occur upon the written recommendation of [L]'s *** therapist/counselor should he or she find that to be in the best interests of [L] and only after application and further Order of [the trial court]."

The trial court's ruling was memorialized in the July 2024 supplemental judgment, which is the subject of this appeal. In the September 2024 supplemental judgment, also challenged on appeal, the trial court awarded stepfather $15,000 in attorney fees and costs.

In his first assignment of error, father argues that the trial court lacked subject matter jurisdiction under the UCCJEA to enter the July 2024 supplemental judgment.[3] A challenge to subject matter jurisdiction under the UCCJEA can be raised at any time during the proceeding. *Schwartz*

_____

[3] Father's assignment of error appears to encompass both a claim that the trial court erred when it ruled at the form of judgment hearing that it had jurisdiction, and a stand-alone claim that the trial court lacked jurisdiction to enter the July 2024 supplemental judgment. Because subject matter jurisdiction can be raised at any time, we address his stand-alone claim and need not consider whether the trial court erred at the form of judgment hearing, as father asserts.

*and Battini*, 289 Or App 332, 338, 410 P3d 319, 323 (2017) ("Oregon law with respect to subject matter jurisdiction generally, and with respect to the UCCJEA specifically, is unequivocal that subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel and may be raised at any time."). And "[a] court's decision made at a time when the court lacked judicial power to act should be vacated." *Menten and Deatherage*, 302 Or App 425, 428, 461 P3d 1075 (2020).

We first provide a brief background on the UCCJEA's relevant jurisdictional provisions. The UCCJEA is "a uniform act governing child custody proceedings and child custody determinations when multiple states are implicated." *Dept. of Human Services v. J. S.*, 368 Or 516, 523, 495 P3d 1245 (2021). Nearly every state has adopted the UCCJEA, including Oregon, *id.*, and Alaska, Alaska Stat. § 25.30.300 - 24.30.910. In Oregon, the UCCJEA is codified at ORS 109.701 to 109.834. *J. S.*, 368 Or at 523.

Among the UCCJEA's primary purposes are "[t]o avoid jurisdictional competition and conflict with other states' courts in child custody matters, [and] to promote cooperation with the courts of other states so that custody decrees are rendered in the state that can best decide the case in the interest of the child[.]" *Id.* at 524. To serve these goals, "[t]he UCCJEA sets forth the rules for determining jurisdiction in custody cases involving multiple jurisdictions." *Dept. of Human Services v. R. M. S.*, 280 Or App 807, 808, 383 P3d 417 (2016).

Important for our purposes are the jurisdictional provisions authorizing Oregon courts to modify child custody orders. At the outset, an Oregon court must have jurisdiction consistent with ORS 109.741 to make an initial custody determination. Once an Oregon court has made an initial custody determination, ORS 109.744 grants that court "exclusive, continuing jurisdiction to make all custody determinations for that child." *Mayfield and Mayfield*, 306 Or App 386, 389, 474 P3d 454 (2020). However, an Oregon court loses its exclusive, continuing jurisdiction if a court "determines that the child, the child's parents and any person acting as a parent do not presently reside in this state." ORS 109.744

(1)(b).[4] A court must therefore consider whether the relevant parties "presently reside[d]" in Oregon at the time that the custody modification proceeding was filed. *See* Uniform Child Custody Jurisdiction and Enforcement Act § 202 comment, 9 ULA 649, 675 (1997) (explaining that "[j]urisdiction attaches at the commencement of a proceeding," and, therefore, "[i]f State A had jurisdiction * * * *at the time a modification proceeding was commenced* there, it would not be lost by all parties moving out of the State prior to the conclusion of proceeding" (emphasis added)).[5] If exclusive, continuing jurisdiction has indeed lapsed because a court determines that none of the required individuals "presently reside[d]" in Oregon at the proceeding's commencement, an Oregon court may modify an earlier custody determination only if it has subject matter jurisdiction to make an initial custody determination under ORS 109.741. ORS 109.744(2).

We recently rejected an interpretation of "presently resid[ing]" in ORS 109.744(1)(b) that reduces to a determination of the parties' physical presence in a jurisdiction. *J. A. G.*, 344 Or App at 525. Instead, we adopted a totality of the circumstances test that "considers not just physical presence, but also other relevant factors such as the family's intent, ongoing connections to the state, and other circumstances that might suggest a significant relationship to the jurisdiction." *Id.* at 523. In other words, determining whether an Oregon court loses exclusive, continuing jurisdiction under ORS 109.744(1)(b) requires not only assessing where the child, the child's parents, and any persons acting as the child's parents physically reside but also whether the extent and nature of their ongoing connections to this state demonstrate that they continue to maintain an Oregon residence.

*J.A.G.* helpfully illustrates how the totality of the circumstances test operates. In that case, we affirmed the juvenile court's determination that, notwithstanding

---

[4] ORS 109.744(1)(a) provides that exclusive, continuing jurisdiction also ceases when an Oregon court "determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships."

[5] "When a statute is based on a uniform act, the commentary to the uniform act is useful to our understanding of the law." *J. S.*, 368 Or at 524.

ORS 109.744(1)(b), Oregon retained exclusive, continuing jurisdiction where a family temporarily lived in California but nevertheless demonstrated ongoing significant ties to Oregon. *Id.* at 525-26. The father had enrolled the children in Oregon online school, continued to receive Oregon-based benefits (such as Temporary Assistance for Needy Families (TANF)), and sought housing in Oregon. *Id.* at 525. Considering the "intent of the UCCJEA to prioritize jurisdiction where the child has significant connections, rather than relying solely on physical presence," we reasoned that "[t]hose connections suggest Oregon remains the appropriate jurisdiction, even if the family has temporarily relocated elsewhere." *Id.* We concluded that the father's actions "suggest that Oregon was not merely a former residence but continued to play a central role in the family's life" such that the family could be said to still "presently reside" in Oregon. *Id.* at 524. We therefore held that ORS 109.744(1)(b)'s "presently resid[ing]" requirement did not extinguish the juvenile court's exclusive, continuing jurisdiction in that matter. *Id.* at 525-26.

Here, father does not challenge the trial court's subject matter jurisdiction to enter the 2018 dissolution judgment, the 2020 supplemental judgment, or the 2022 supplemental judgment. He argues only that the trial court lacked subject matter jurisdiction under the UCCJEA to enter the July 2024 supplemental judgment.

Based on the record before us, we cannot determine whether the trial court had jurisdiction to modify custody of L via the July 2024 supplemental judgment. The record contains evidence that exclusive, continuing jurisdiction may have ended prior to the July 2024 supplemental judgment's entry. Specifically, the 2020 supplemental judgment indicated that once stepfather's National Guard enlistment ended, stepfather and L did not plan to return to Oregon, but instead would relocate to Washington.[6] In addition, the trial court's November 2021 letter opinion stated that "the parties are all currently residing in Alaska."

---

[6] Specifically, the 2020 supplemental judgment stated, "It is anticipated that [stepfather]'s enlistment with the National Guard will end in May 2022, and the family will move to Spokane, Washington."

However, the record does not clearly establish that the trial court lost exclusive, continuing jurisdiction. It is unclear whether the trial court's statement that "the parties are all currently residing in Alaska" was a determination under ORS 109.744(1)(b) that the relevant individuals—L, stepfather, mother, and father—no longer "presently reside[d]" in Oregon, particularly because whether individuals "presently reside" in Oregon is a totality of the circumstances test that goes beyond mere physical location. *See J. A. G.*, 344 Or App at 525. In particular, the record is not sufficiently developed on the issue of whether father did or did not "presently reside" in Oregon at the time stepfather filed the 2022 motion to modify. Unlike L, mother, and stepfather, it is uncertain whether father intended to return to Oregon or otherwise maintained any significant connections to Oregon while in Alaska. And because ORS 109.744(1)(b) requires a determination that L and all three of L's parental figures "do not presently reside" in this state, we cannot determine whether, as a matter of law, the trial court maintained exclusive, continuing jurisdiction to modify custody of L when it entered the July 2024 supplemental judgment. *Cf. Dept. of Human Services v. M. R.*, 298 Or App 59, 67, 69, 447 P3d 74 (2019) (vacating dependency jurisdiction judgment and remanding for the juvenile court to address the "fact-bound question" of whether the child's time away from Oregon constituted a "temporary absence" under the UCCJEA).

We therefore vacate the July 2024 supplemental judgment and remand for the trial court to determine whether anyone—L, stepfather, mother, or father—"presently reside[d]" in Oregon in August 2022, when stepfather filed the motion to modify. If the trial court determines that, under the totality of the circumstances, L or at least one of L's parental figures (stepfather, mother, or father) "presently reside[d]" in Oregon in August 2022, then the trial court had exclusive, continuing jurisdiction to modify custody of L in the July 2024 supplemental judgment. If neither L, stepfather, mother, nor father "presently reside[d]" in Oregon in August 2022, then the trial court did not have exclusive, continuing jurisdiction under ORS 109.744(1). If that is the case, the trial court must assess whether the modification

was nonetheless permissible under ORS 109.744(2), which allows modifications only if the trial court "has jurisdiction to make an initial determination under ORS 109.741." That will require the trial court to evaluate the facts as they existed in August 2022 under the statutory framework set forth in ORS 109.741.

Because it remains uncertain whether the trial court had subject matter jurisdiction to enter the July 2024 supplemental judgment, we do not reach father's second assignment of error, which alleges that the trial court erred by conditioning father's parenting time on a therapist's recommendation and further order of the trial court. And because we vacate the July 2024 supplemental judgment, we also vacate and remand the related award of attorney fees and costs in the September 2024 supplemental judgment, which is the subject of father's third assignment of error. *See* ORS 20.220(3)(a) ("If the appellate court reverses the judgment, the award of attorney fees or costs * * * shall be deemed reversed[.]"); *see also State ex rel Willamette Cmty. Hlth. Sols. v. Lane Cty.*, 274 Or App 545, 554, 361 P3d 613 (2015) ("Because we vacate the general judgment, the attorney-fee award cannot stand.").

July 2024 supplemental judgment vacated and remanded; September 2024 supplemental judgment vacated and remanded.