Argued and submitted November 21, 2013, affirmed February 26, 2014

In the Matter of B. N. C., II,
a Child.

DEPARTMENT OF HUMAN SERVICES,
P*etitioner-Respondent,*

*v.*

N. B.,
aka N. B.-C.,
*Appellant.*

Multnomah County Circuit Court
2010803671;
Petition Number 109611M

In the Matter of D. B.-E.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

N. B.,
aka N. B.-C.,
*Appellant.*

Multnomah County Circuit Court
2010803672;
Petition Number 109521

In the Matter of M. B.-C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

N. B.,
aka N. B.-C.,
*Appellant.*

Multnomah County Circuit Court
2010803673;
Petition Number 109611M

In the Matter of J. B.,
aka J. M., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

N. B.,
aka N. B.-C.,
*Appellant.*

Multnomah County Circuit Court
2010803674;
Petition Number 109611M

In the Matter of L. B.-M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

N. B.,
aka N. B.-C.,
*Appellant.*

Multnomah County Circuit Court
2010803675;
Petition Number 109530;
A154475

323 P3d 479

Megan L. Jacquot argued the cause and filed the brief for appellant.

Erin K. Galli, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.*

SCHUMAN, S. J.

---

* Duncan, P. J., *vice* De Muniz, S. J.

## SCHUMAN, S. J.

The juvenile court has taken jurisdiction over mother's five children, B, M, J, D, and L, ages 9, 7, 6, 3, and seven months, pursuant to ORS 419B.100, based on allegations relating to mother's mental health and a diagnosis of "medical child abuse," and has ordered mother to undergo a psychological examination. Mother appeals, seeking a termination of the wardship as to four of the children (M, J, D, and L), and we affirm.

At the time of the hearing, three of the children, B, M, and J, were already wards of the court (and in foster care with their maternal grandmother) by virtue of a jurisdictional judgment entered in June 2010, based on the allegation, to which mother had stipulated, that mother's mental health interfered with her ability to safely parent the children. D, a son age six at the time of the hearing, had been sent in 2010 to live with his father in Washington, and the 2010 jurisdictional petition as to D was never adjudicated.

Mother participated in significant counseling and therapy and, in July 2012, on the recommendation of DHS, M and J were returned to mother from foster care. Also at around that same time—July 19, 2012—L was born. In the meantime, D's situation in Washington with his father had deteriorated. As a result, Washington officials, in August 2012, ordered that D be returned to mother. Thus, in a short period of time, mother suddenly had physical custody of four of her children. By that time, DHS had become concerned that L was not gaining sufficient weight, but left L in mother's care under a "safety plan" that required mother to maintain constant contact with service providers and keep L's schedule as simple and consistent as possible. Mother complied with the plan, but when L had failed to regain her birth weight by the age of one month, the child's primary care physician referred the case to Dr. Leonhardt, a pediatrician and child abuse specialist from CARES Northwest. Leonhardt diagnosed L as suffering from medical child abuse. He testified that "medical child abuse," a diagnosis adopted relatively recently by the American Academy of Pediatrics, describes a form of child abuse in which "a parent or care taker fabricates or makes up symptoms or produces

symptoms in a child that get the child unnecessary medical care." The child receives medical care because a health care provider is reacting to falsified symptoms or real symptoms that may have been produced or created. Leonhardt testified at the hearing that caretakers of children who are diagnosed with medical child abuse often have significant mental illness themselves. Leonhardt had previously diagnosed each of mother's four older children with medical child abuse and was of the opinion that mother presented a risk of medical child abuse to all of the children. All of the children were removed from mother's care.

On October 11, 2012, the state filed new petitions as to B, M, and J, with two additional allegations: (1) Mother, having participated in services, has been unable to ameliorate the issues that had interfered with her ability to parent her children; and (2) L had been diagnosed as a victim of medical child abuse by mother, placing B, M, and J at risk of harm. At the hearing, the court also had before it a jurisdictional petition as to L, filed October 17, 2012, and a petition as to D, filed that same date. The operative allegations in the petitions relating to L and D are identical to the allegations with respect to B, M, and J.

The juvenile court found the allegations to be true. It made the following findings:

"This case is notable for the peculiar junction at which the present dispute arose. This case does not involve a parent or children 'new' to the juvenile system. In essence, Mother had been actively working services to address the issues raised by the initial removal of some of her children from her care. These issues had been identified both in the jurisdictional allegations admitted to by Mother, but also in the evaluations and subsequent treatment of Mother. As Mother made progress in those services, the transformation was noted by Dr. Kolbell to be 'fragile.' He stated that the wrong events would 'imperil her positive trajectory.' Admittedly, there were bumps in the road of Mother's progress, but return of most of the children was suggested by DHS and approved by Referee Knofler in late spring 2012.

"The fragility of Mother's progress is confirmed by both the circumstances of the conception of [L] (as described by Mother) and the subsequent diagnosis of Medical Child

Abuse once [L] was born. The return [of] the older children by the Oregon court, the birth of [L] combined with the addition of [D] (a Washington court placement) occurred in an inordinately short amount of time. Mother was overwhelmed and the progress she made was insufficient to allow her to make consistently safe choices for herself and the children. What occurred is confirmation of Dr. Kolbell's opinion that Mother would retreat back to unhealthy relationships and patterns if there was too much too soon.

"What is an open question, and one worthy for further consideration, is the ability of Mother to effect lasting change under different circumstances."

The court explained in its jurisdictional judgment that, although mother had made much progress in many areas, the medical evidence established that her progress was "fragile." The court found that the fragility of mother's progress was confirmed by events that occurred when, after the birth of L, on July 19, 2012, and the return to mother's care of M, J, and D, mother became overwhelmed and made unsafe choices for herself and the children. The unsafe choices included medically abusing L by providing her with inadequate nourishment so that L could receive medical care, and maintaining regular contact with the father of L, a convicted sex offender whom she considers a father figure to the children, despite his past physical abuse of B and D.

Mother challenges the court's continuing jurisdiction as to M and J, as well as: (1) the jurisdictional judgments as to D and L; (2) the requirement in the juvenile court's dispositional order that mother participate in a psychological evaluation focusing on medical child abuse; and (3) the requirement in that order that mother release her medical records. She asserts that she has addressed all of the issues alleged in the petitions and that the record shows that, at the time of the hearing, L had gained significant weight and was healthy, mother had a safe living situation, was having successful visits with all the children, was working with service providers and community resources to assist with her parenting, and was successfully managing her mental health issues, which relate primarily to anxiety. Mother contends that there is insufficient evidence to prove that her current actions and conditions endanger

the children. She disputes the diagnoses of medical child abuse with respect to each of the children, contending that the evidence does not support those diagnoses and also does not support a determination that mother's current circumstances—certainly with respect to M, J, and D—endanger the children.

Mother does not request *de novo* review. Thus, we review the evidence in the light most favorable to the trial court's disposition and assess whether the record was legally sufficient to permit the determination that the children are within the juvenile court's jurisdiction. *Dept. of Human Services v. N. P.*, 257 Or App 633, 307 P3d 444 (2013). We are bound by the juvenile court's findings of fact that are supported by the evidence in the record. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968). In the absence of findings, we presume that the court resolved factual disputes consistently with its conclusion. *Id.*

DHS asserts that the evidence is legally sufficient to support the juvenile court's findings and that those findings support the continuation of jurisdiction as to M and J, and the taking of jurisdiction over D and L. We need not go into great detail on the evidence, but we conclude that, despite mother's most recent marked improvement in management of her mental health concerns, the evidence is sufficient to support the juvenile court's findings in support of jurisdiction over M, J, D, and L. It includes evidence of a history of mother medically abusing each of the older children by repeatedly reporting or causing medical symptoms in order to obtain medical intervention, including two incidents in which medical experts believed that mother had attempted to suffocate one of the children, J, during a period of hospitalization. While participating in therapy in 2011, mother became pregnant with L; the father was a convicted sexual offender who had also physically abused two of mother's children, and whom she continues to see on a regular basis. The most recent incident, involving L, the youngest child and a newborn, occurred after mother had participated—seemingly successfully—in services and therapy for an extended period of time, and involved medical child abuse by withholding nutrition. Although mother disputes that diagnosis, it is supported by legally sufficient evidence in the

record. Also, there is expert medical testimony that mother's progress in dealing with her mental health is fragile and that the children "still remain at risk of harm or * * * significant harm and potentially death in her care unless * * * with the right intensive mental health therapy and home environment, kids can be parented safely."

We conclude that the evidence in the record is legally sufficient to support the juvenile court's findings and that those findings support the bases for jurisdiction of M, J, D, and L under ORS 419B.100.

Affirmed.