No. 937          October 29, 2025          511

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of K. J. A. G.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

K. J. A. G.,
*Respondent,*

*v.*

J. A. G.,
*Appellant.*

Jackson County Circuit Court
24JU02889; A187239 (Control)

In the Matter of J. P. I. P.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

J. P. I. P.,
*Respondent,*

*v.*

J. A. G.,
*Appellant.*

Jackson County Circuit Court
24JU02888; A187238

Charles G. Kochlacs, Judge.

Argued and submitted September 26, 2025.

George W. Kelly argued the cause and filed the briefs for appellant.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent Department of Human Services. Also

on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

G. Aron Perez-Selsky filed the brief for respondent child.

Before Tookey, Presiding Judge, Egan, Judge, and Jacquot, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

In this juvenile dependency case, father challenges the juvenile court's determination that Oregon has jurisdiction to make his children, JP and KG, wards of the court. Father argues that the juvenile court erred when it resolved his challenge to Oregon *subject matter jurisdiction* by misapplying the test for jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (codified as ORS 109.701 to 109.834). The Oregon Department of Human Services (ODHS) argues that the juvenile court correctly resolved the factual disputes. We conclude that the juvenile court made findings that were necessary to apply the legal test under the UCCJEA and that subject matter jurisdiction over the children lies in Oregon. Accordingly, we affirm the juvenile court's determination that Oregon has jurisdiction.

Juvenile court dependency jurisdiction is subject to the UCCJEA. ORS 419B.803(2). We review matters of jurisdiction for errors of law. *Campbell v. Tardio*, 261 Or App 78, 80, 323 P3d 317 (2014). Nevertheless, the determination of *residency*, *temporary absence*, and the ultimate question of *subject matter jurisdiction* are all heavily dependent on specific facts in each individual case. *See Menten and Deatherage*, 302 Or App 425, 427-30, 461 P3d 1075 (2020) (illustrating that determining subject matter jurisdiction is heavily fact dependent). The facts presented in this case, and the juvenile court's determination of credibility, are critical to the resolution of the legal issue before us. The facts presented at the jurisdictional hearing follow.

## I.   FACTS

At issue are JP (age 9) and KG (age 7), who were removed from their parents in June 2024. In this juvenile court adjudication arising out of that removal, mother admitted that her "residential instability interferes with her ability to safely parent the [children], placing the [children] at risk of harm." Father contested jurisdiction, and the court ruled that ODHS proved the following jurisdictional bases:

> "The father has an anger control problem that places the [children] at risk of harm.

"The father's mental health problems interfere with his ability to safely parent the [children] and place the [children] at risk of harm.

"The father's residential and/or financial instability interfere with his ability to safely parent the [children].

"The father has exposed the [children] to unsafe people, placing the [children] at risk of harm.

"The father's chaotic lifestyle places the [children] at risk of harm."

Father does not challenge the sufficiency of the evidence warranting dependency jurisdiction, nor contest his "mental health problems" and the family's "residential instability." Instead, father contests the court's subject matter jurisdiction under the UCCJEA.

The following facts pertain to the court's subject matter jurisdiction. Prior to the children's removal in 2024, the circuit court made a child custody determination in 2022. Mother and father did not marry but they lived together for about ten years. After they separated, they stipulated to a judgment that gave father custody of KG and mother custody of JP. The judgment was entered in Lane County in March of 2022. The parties continued to stay in close contact and cohabited. Thus, for both parties, the March 2022 judgment lists the same address in Eugene.

By the summer of 2023, the parties had been living in Blue River, Oregon. But wildfires forced them to evacuate, and they left on August 17, 2023. Within a few days, they were living in Portland, where they stayed until the middle of October. They allege that they moved to San Francisco, California, arriving on October 17, 2023.

When they arrived in San Francisco, father claimed that he and the children took up residence at an apartment leased by "Travis," father's brother-in-law. Father testified that he added his name to the lease. Although mother was present in San Francisco, she slept in a van parked outside of the apartment.

The children began online school with the Cascade Virtual Academy, a public school based in Prineville,

Oregon. Father said he listed San Francisco as their place of residence when he signed them up. He testified that "the online school, you have to register in the district that you're living in, where your computer's at. So * * * I was applying in San Francisco * * *." Father further testified: "I was getting them set up with online school in San Francisco. As soon as we got down there, I got them all hooked up with all of the school stuff locally."

Father also applied for locally provided social services in San Francisco. He told the court: "I went to Compass Family Services, and got all joined up with all the full services for everything: case managers, housing navigator, all of those things; a therapist every week, Luis." In addition to signing the children up for schooling and his engagement with Compass Family Services, father claimed that he began working for the "Bay Area Resource Center." He also sought California-provided state benefits.

In November, health insurance and Temporary Assistance for Needy Families (TANF) benefits that the family had been receiving in Oregon came to an end; but when father asked for an extension, the State of Oregon continued to provide those benefits. Because Oregon continued to give father benefits, a California agency turned down father's application for California benefits. Father received Oregon-based TANF for the six months he alleged to have lived in San Francisco. Simultaneously, he received some level of benefits from California and housing assistance from San Francisco County.

Father testified that in March or early April 2024, he and the children moved to Berkeley, California. Father stated he planned to enroll the children "into Berkeley Elementary School" by fall. However, father's Oregon case worker, Carly Davy, indicated that father was in Eugene, Oregon in January 2024. Father and mother testified that they both stayed in California during the entire six months following their arrival on October 17, 2023. But Davy testified:

"Q:  [W]ere you part of outlining the history of where the children have lived the past six months for [the UCCJEA] section of the [dependency] petition?

"A:    Yes.

"*****

"A:    Yeah. So [the petition] outline[s] where the family has been seen, including multiple counties throughout Oregon and San Francisco, California. The dates on here we gathered due to calls of concern that had come into the Agency ***. Usually, if we get a call of concern it means that the family has been seen within that area.

"Q:    And were the calls of concern where [father] was seen in Eugene, Oregon, in January 2024?

"A:    Yes.

"Q:    And that was in-person?

"A:    Yeah. It was in the Lane County, specifically Eugene, Self-sufficiency Office.

"Q:    And that is the one outlined in the protective custody report as well?

"A:    Yes.

"*****

"A:    Yeah. So, for the history, we have calls of concern in August of 2023 in Lane County. We have September of 2023 in Multnomah County. Then we have nothing from September until January 2024, where we received multiple calls in each month except for March."

Davy also testified that mother, prior to trial, had given Davy conflicting statements about the dates that the family moved to California. According to Davy, mother at times made statements that were consistent with the testimony mother later gave at trial (*i.e.*, mother said that the family arrived in California on October 17, 2023, and no one left California until the end of April); but, at other times, mother had told Davy that the family started to live in California around Thanksgiving or Christmas, and that there had been a couple of times when father and KG had gone on a trip to Oregon.

At the end of the jurisdictional hearing, the juvenile court made specific factual findings:

"THE COURT: I did have notes on the credibility issue. As to Father's testimony, I generally find his testimony fantastical, unreliable, lacks credibility in most respects.

"* * * * *

"THE COURT: [Regarding mother,] I'm not going to make a finding one way or another. I'm not finding her credible; I'm not finding her not credible. She said what she said.

"So as to the UCCJEA, I do find Oregon is the—I do find Oregon has jurisdiction under the UCCJEA for a variety of reasons. Part of it is that the parents have been operating under a domestic relations case, 22DR00021, and same case, 24DR19569.

"Really up till yesterday, they consented to jurisdiction over that matter when they urged a resolution that it looked like they thought they would get out of the Child Welfare case with.

"* * * * *

"THE COURT: Okay. So, the parents have been operating under the initial judgment of Lane County with Oregon jurisdiction, obviously, for two or three years. That is of some weight to me.

"From Mom's perspective, there's a little conflicting evidence as to the timeline. I do find overall, though, that the UCCJEA does have jurisdiction based on Ms. Davy's testimony as well as to Mom's statements to her.

"And then also, * * * I'm more convinced about the TANF rules about the residential requirements of those provisions. Clearly, Father's intent was to remain in Oregon with the aggressive seeking of benefits, his statement that he is looking for homes, buying homes here and there, in Ashland and other places, and the intent was to stay.

"The SOU letter is not very convincing to me. It was dated February 22. There is a blurb at the bottom that said non-resident classification. That was for the spring term.

"* * *. You know, I don't know if they said you need to be here for a year, whatever. But I'm finding that TANF information more convincing as to the residency issue.

"The facts: Kids are under 18, there's a current threat of serious loss or injury to the children. The facts proven are

enough to support finding those E, H, I, J, J, K allegations; D, F, and G have not been proven.

"There is a current threat of serious loss or injury to the children. There is a nexus between the risk-causing conduct and the harm to the children. The risk is present at the time of this hearing."

## II.  ANALYSIS

A.  *The UCCJEA*

As the UCCJEA provides the statutory basis for establishing subject matter jurisdiction, this court must interpret the legislature's intent under the methodology set forth in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (considering the text and context of the statute and considering any legislative history that appears useful to the court's analysis). To understand the text and context, it is necessary to understand the origin of the UCCJEA.

That history began with the effort to combat conflicting state standards and requirements for jurisdiction. The UCCJEA is a revision of the Uniform Child Custody Jurisdiction Act (UCCJA) of 1968. When the National Conference Commission on Uniform State Laws (NCCUSL) sought to reduce the over 175,000 annual parental child abductions with the Parental Kidnapping Prevention Act (PKPA) in 1981, the UCCJA and the PKPA presented some conflicting grounds for jurisdiction. The NCCUSL revised the UCCJA into the UCCJEA (1997) which Oregon adopted in 1999 emphasizing the establishment of *subject matter jurisdiction* before consideration of the best interests of the child and thus resolving the schism with the PKPA. *See* Andrew Jack Botros, *The UCCJEA, the PKPA, and Preemption: Why the Jurisdictional Provisions of the UCCJEA Cannot be Waived*, 34 J of the Am Acad of Matrim Law 35 (2021).

The UCCJEA is specifically designed to recognize that Article IV, section 1, of the United States Constitution requires that each state give full faith and credit to the judicial proceedings of other states. Congress enacted the PKPA, 28 USC § 1738A (2000), to ensure state compliance with the child custody orders of other states and to eliminate parental kidnapping by requiring states to give full faith and credit

to custody decrees. The UCCJEA was tailored as a uniform state law to complement the PKPA and to allow states to fulfill their full faith and credit requirements. *See* UCCJEA prefatory note, 9 ULA 649, 650 (1999). Its purposes follow that of the UCCJA, 9 ULA 261 (1999), to provide jurisdictional clarity and to promote interstate cooperation. *See* UCCJEA prefatory note, 9 ULA at 264, 650.

The UCCJEA sets forth the rules for determining subject matter jurisdiction in custody cases involving multiple jurisdictions. *Dept. of Human Services v. S. C. S.*, 253 Or App 319, 324, 290 P3d 903 (2012), *rev den*, 353 Or 428 (2013). It applies to dependency proceedings in Oregon. ORS 419B.803(2); *see Dept. of Human Services v. G. G.*, 234 Or App 652, 656, 229 P3d 621 (2010) (discussing the UCCJEA). Under the UCCJEA, deciding whether Oregon has jurisdiction to make an *initial custody* determination requires consideration of several factors, including whether Oregon is the "home state" of the child and, if not, whether other states with jurisdiction have declined to exercise that jurisdiction.[1]

---

[1] ORS 109.741 provides in full:

"(1) Except as otherwise provided in ORS 109.751 [temporary emergency custody], a court of this state has jurisdiction to make an initial child custody determination only if:

"(a) This state is the *home state* of the child on the date of the commencement of the proceeding, or was the *home state* of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

"(b) A court of another state does not have jurisdiction under subsection (1)(a) of this section, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under ORS 109.761 or 109.764, and:

"(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

"(B) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships;

"(c) All courts having jurisdiction under subsection (1)(a) or (b) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under ORS 109.761 or 109.764 ; or

"(d) No court of any other state would have jurisdiction under the criteria specified in subsection (1)(a), (b) or (c) of this section.

"(2) Subsection (1) of this section is the exclusive jurisdictional basis for making child custody determinations by a court of this state.

The parties agree that the Circuit Court for Lane County made the initial custody decision and established Oregon as the "home state" of the children in 2022. For a child who is at least six months old, the child's "home state" means "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." ORS 109.704(7). Those considerations set out in ORS 109.741(1) provide the "exclusive jurisdictional basis for making a child custody determination by a court of this state." ORS 109.741(2). That jurisdiction continues until an Oregon court determines that the child no longer has a *significant connection* to the state such that *substantial evidence* is no longer available to the court, or when the court determines that the child does not "presently reside" in Oregon. ORS 109.744(1)(a), (b).[2] On appeal, father does not contend that Oregon lost exclusive continuing jurisdiction for reasons described in ORS 109.744(1)(a). On appeal, the issue is whether father or the children "presently reside(d) in this state" at the time of the removal.

Determining whether "the child[ren] ***[and] parents *** [did] not presently reside in" Oregon at the time of the petition filing in June 2024 presents an issue of first

---

"(3) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination."

(Emphases added.)

[2] ORS 109.744 provides in full:

"(1)   Except as otherwise provided in ORS 109.751 (Temporary emergency jurisdiction), a court of this state that has made a child custody determination consistent with ORS 109.741 (Initial child custody jurisdiction) or 109.747 (Jurisdiction to modify determination) has exclusive, continuing jurisdiction over the determination until:

"(a)   A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships; or

"(b)   A court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state.

"(2)   A court of this state that has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if the court has jurisdiction to make an initial determination under ORS 109.741 (Initial child custody jurisdiction)."

impression before this court—what is the meaning of "presently reside" as that term is used in the UCCJEA? We can consider the text of the original UCCJEA and its comments to interpret the terms of the statute. *Dept. of Human Services v. M. P.*, 328 Or App 502, 508, 517-18, 528 P3d 1032 (2023).

At the jurisdictional hearing, father testified and argued that Oregon lacked subject matter jurisdiction under the UCCJEA for the following reasons: He and the children had resided in the State of California for more than six consecutive months between October 2023 and April 2024; his intent was to remain in the San Francisco area with the children; and the state removed the children and filed the dependency petition in June 2024 while the family was temporarily in Oregon. In response, ODHS contended that father and the children had been living in Oregon for years prior to their temporary move to San Francisco; the Jackson County Circuit Court had jurisdiction over custody of the children in two domestic relations actions between father and the mother of the children which actions preceded and post-dated their departure to San Francisco (Case numbers 22DR00021 and 24DR19569); the family continued to receive health insurance and TANF benefits from the State of Oregon; father and the children had returned to Oregon between January and March 2024 making their stay in California less than six months; and father and the children were living in Oregon thus fulfilling the "exclusive, continuing jurisdiction" requirements of the UCCJEA.

The juvenile court received all this evidence and made findings pertinent to the "exclusive, continuing jurisdiction" determination under the UCCJEA, concluding that it, as an Oregon court, had subject matter jurisdiction in Oregon.

B.  *"Presently Residing"*

We recognize that jurisdiction under the UCCJEA depends on whether "the child[ren] [and] the child[ren]'s parents" were "presently resid(ing)" in Oregon during the sixth months prior to the hearing and we recognize that there is conflicting evidence on that question. ORS 109.744(1)(b). In evaluating the juvenile court's ruling, we are bound by the

juvenile court's findings of fact that are supported by the evidence in the record. *Dept. of Human Services v. N. B.*, 261 Or App 466, 472, 323 P3d 479 (2014). Further, as a general rule, "in the absence of findings, we presume that the court resolved factual disputes consistently with its conclusion." *Id.* That presumption exists so long as the juvenile court applied the "correct legal analysis." *State v. Ellis*, 252 Or App 382, 390, 387 P3d 215 (2012), *rev den*, 353 Or 428 (2013).

As the meaning of the phrase "presently residing" is a question of first impression in Oregon, we interpret the phrase applying the methodology in *Gaines* 346 Or at 171-72. In the matter at hand, the UCCJEA's context and legislative history include commentary on the uniform act. *Dept. of Human Services v. J. S.*, 368 Or 516, 524, 495 P3d 1245 (2021) ("When a statute is based on a uniform act, the commentary to the uniform act is useful to our understanding of the law."). The state suggests we should also consider the "instructive case law from other uniform-law jurisdictions[.]" *Western Helicopter Services, Inc. v. Rogerson Aircraft Corp.*, 311 Or 361, 363 n 2, 811 P2d 627 (1991).

In that regard, the state urges us to adopt the rationale of a Colorado Supreme Court case, *Brandt v. Brandt*, 2012 Co 3, ¶ 3, 268 P3d 406, 408 (Colo 2012), which adopted a "totality of circumstances" standard for determining where individuals presently reside. Father points out that *Brandt* does not follow the commentary to the UCCJEA. That commentary reads as follows:

> "Continuing jurisdiction is lost when the child (and) the child's parents *** no longer reside in the original decree State. *** It is the intention of this Act that paragraph [(1) (b)] of this section means that the named persons no longer continue to actually live within the State. Thus, unless a modification proceeding has been commenced, when the child (and) the parents *** physically leave the State to live elsewhere, the exclusive, continuing jurisdiction ceases.

> "The phrase 'do not presently reside' is not used in the sense of a technical domicile. The fact that the original determination State still considers one parent a domiciliary does not prevent it from losing exclusive, continuing jurisdiction after the child (and) the parents *** have moved from the state."

UCCJEA § 202 comment 2, 9 ULA at 674. Father suggests that a narrow reading of the commentary requires a determination whether father and the children "physically left the state to live elsewhere." *Staats v. McKinnon*, 206 SW3d 532, 549 (Tenn App 2006); *see also Wagner v. Wagner*, 2005 PA Super 377, ¶ 15, 887 A2d 282, 286 (Pa Super Ct 2005) (defining residency as "living in a place, requiring only physical presence").

C.   *Comparative Analysis*

In determining whether Oregon retains jurisdiction under the UCCJEA, the issue of whether the children, JP and KG, are "presently residing" in Oregon is central. The juvenile court concluded that Oregon maintained jurisdiction, noting that, despite the time the family spent in California, significant connections to Oregon remained, particularly through the children's schooling, continued receipt of Oregon benefits, and father's intent to remain in the state. To assess the correctness of this conclusion, we compare and contrast the approaches of different jurisdictions, evaluating whether Oregon's application of the UCCJEA aligns more closely with the "totality of the circumstances" standard or a stricter physical presence test.

One prominent approach to the "presently residing" question is the "totality of the circumstances" test, which considers not just physical presence, but also other relevant factors such as the family's intent, ongoing connections to the state, and other circumstances that might suggest a significant relationship to the jurisdiction. In *Brandt*, the Colorado Supreme Court adopted this approach, emphasizing that residency should be determined by a variety of factors beyond mere physical presence. 2012 Co at ¶ 3, 268 P3d at 408. The test focuses on where the child has the strongest connections, including where they go to school, where they receive healthcare, and whether their parents intend to remain in each state.

That approach aligns closely with how the juvenile court applied the UCCJEA in this case. Father's ongoing actions—registering the children for online school in an Oregon district, continuing to receive Oregon TANF

benefits, and attempting to find housing in Oregon—demonstrate significant ties to the state, even while temporarily staying in California. These actions suggest that Oregon was not merely a former residence but continued to play a central role in the family's life.

Similarly, in *State of N.M. ex rel. CYFD v. Donna J.*, 129 P3d 167, 171 (NM Ct App 2006), the New Mexico Court of Appeals also looked at multiple factors, including the family's intentions and connections to New Mexico, rather than just focusing on physical presence. *Donna J.* emphasized that "presently residing" involves more than a technicality; it involves a holistic view of where the family's center of life exists. *Id.* at 171-72.

Thus, the "totality of the circumstances" test, as explained in *Brandt* and *Donna J.*, considers factors beyond physical presence, evaluating the broader context of the family's life. This test supports the juvenile court's determination that Oregon maintains jurisdiction, as it accounts for the ongoing connections to the state despite the family's temporary relocation to California.

In contrast, some jurisdictions adopt a more restrictive approach to the "presently residing" question, focusing primarily on whether the child or family is physically located in the state at the time of the legal proceedings. For example, in *McKinnon*, the Tennessee Court of Appeals found that when the child physically leaves the state, the state loses jurisdiction under the UCCJEA. 206 SW3d at 549. Similarly, in *Wagner*, the Pennsylvania court determined that jurisdiction in Pennsylvania was no longer valid because the father and child had moved out of state. 2005 PA Super at ¶ 15, 887 A2d at 287. Those cases are instructive in their interpretation of residency as requiring only physical presence within the state, disregarding other factors such as the family's intent or ongoing connections.

D.   *Resolving the Meaning of "Presently Residing"*

We adopt an approach emphasizing the necessity of a probing examination of the jurisdictional question. We view the requirement of a judicial determination under the UCCJEA as more than a procedural technicality. It reflects

a deliberate effort to prevent courts from treading on one another's jurisdiction, and to ensure that custody orders and dispositional orders will remain fully enforceable until a court determines they are not. *See In re Marriage of Nurie*, 176 Cal App 4th 478, 502, 98 Cal Rptr 3d 200, 221 (2009). In our view, those decisions that consider only physical presence and not the totality of the circumstances in evaluating the "presently residing" requirement do not align with the UCCJEA's intent to consider broader factors that indicate a deeper, ongoing connection to a jurisdiction. In this case, for example, the focus on physical presence alone would disregard the continuing connections to Oregon, such as ongoing educational arrangements and the receipt of TANF benefits. Those connections suggest that Oregon remains the appropriate jurisdiction, even if the family has temporarily relocated elsewhere. The commentary's reference to where the named persons "actually live" also supports looking at the totality of the circumstances. Thus, we adopt the broader "totality of the circumstances" approach.

Here, the juvenile court considered the totality of circumstances when it carefully considered factors such as the family's continued receipt of Oregon-based benefits (including TANF), the children's enrollment in an Oregon virtual school, and father's actions in seeking housing in Oregon, despite the family's temporary physical residence in California. These actions demonstrate the family's ongoing ties to Oregon, which the juvenile court found persuasive in concluding that Oregon had jurisdiction under the UCCJEA. That determination is consistent with the intent of the UCCJEA to prioritize jurisdiction where the child has significant connections, rather than relying solely on physical presence.

Based on the foregoing analysis, we conclude that the juvenile court correctly applied the UCCJEA. By considering the totality of the circumstances—including the family's ongoing connection to Oregon through schooling, benefits, and father's actions—the juvenile court appropriately determined that Oregon retained jurisdiction. Although the family temporarily lived in California, the evidence supports the conclusion that Oregon remained the state with

the most significant connections to the children, in line with the intent of the UCCJEA. Accordingly, we affirm the juvenile court's determination that Oregon has jurisdiction in this matter.

Affirmed.