628 November 5, 2025 No. 959

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of Z. W.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. M. W.,
*Appellant.*

Multnomah County Circuit Court No.
22JU04018;
Petition No.
114663;
A184590 (Control)

In the Matter of G. W.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. M. W.,
*Appellant.*

Multnomah County Court Case No.
22JU04019;
Petition No.
114663;
A184600

Maurisa R. Gates, Judge.

Argued and submitted September 26, 2025.

Kyle Sessions Vazquez, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Stacy M. Chaffin, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield,

Attorney General and Benjamin Gutman, Deputy Attorney General.

Before Tookey, Presiding Judge, Egan, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

In this consolidated appeal, father challenges permanency judgments for two of his children, Z and G.[1] Father argues that the juvenile court lacked subject matter jurisdiction to enter them. We conclude that, at the time the dependency petition was filed in August 2022, the juvenile court had temporary emergency jurisdiction pursuant to ORS 109.751, which is part of Oregon's enactment of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), set forth at ORS 109.701 to 109.834. Drawing reasonable inferences from the evidence in the record, we further conclude that the juvenile court had significant-connection jurisdiction pursuant to ORS 109.741(1)(b) when it stated in the jurisdiction and disposition judgment in June 2023 that it had jurisdiction under the UCCJEA to make a child custody determination. As a result, when the juvenile court changed the permanency plans for Z and G from unification to guardianship in May 2024, it had authority to do so. We therefore affirm.

FRAMING OBSERVATIONS

Before turning to the facts and our analysis of the UCCJEA, we pause to highlight the posture of this appeal. In June 2024, father filed notices of appeal from the juvenile court's May 2024 permanency judgments changing the plans for Z and G from reunification to guardianship. In July 2024, we consolidated the cases. In September 2024, we granted father's motion to hold the appeal in abeyance to allow appellate counsel to "clarify a subject matter jurisdiction issue."

Subsequently, in the juvenile court, father moved to set aside various judgments, including the permanency judgments at issue here, on the ground of lack of subject matter jurisdiction under the UCCJEA. The juvenile court held a hearing on the motion, and, on July 7, 2025, the juvenile court denied it.[2] On July 10, 2025, father provided notice that the appeal could be reactivated, and we did so on July 14, 2025.

_____

[1] Mother is not a party to this appeal. The appeal concerns the twin girls Z and G, who were 12 years old at the time the case commenced. Father has not appealed the permanency judgment as it relates to his third child.

[2] As requested by the Oregon Department of Human Services (ODHS), we take judicial notice of the fact that the juvenile court denied father's motion, which is a fact not subject to reasonable dispute. OEC 201(b). We do not take

Father separately appealed the juvenile court's order denying the motion to set aside. *See Dept. of Human Services v. K. M. W.*, Case No. A188326, and *Dept. of Human Services v. K. M. W.*, Case No. A188327. In the instant case, father requests that we determine that the juvenile court did not have subject matter jurisdiction under the UCCJEA to change the permanency plans for Z and G, even though we do not have the full record of what occurred below at the juvenile court hearing on the motion to set aside, which addressed the same question.

In future cases, we encourage the parties to avoid litigating questions of subject matter jurisdiction under the UCCJEA in a piecemeal fashion.[3] Nevertheless, in the instant case, which is unusual in that it involves a foreign country that has not adopted the UCCJEA, we conclude that the evidence in the record is sufficient to reasonably infer that the juvenile court had subject matter jurisdiction by the time of the permanency hearings.

## FACTS

In 2018, father, mother, and their children moved from Oregon to Finland. In 2022, Finland deported the family back to Oregon. When they arrived in Oregon, the Oregon Department of Human Services (ODHS) took custody of the children. A day later, on August 30, 2022, ODHS filed a dependency petition regarding the children, and the juvenile court held a shelter hearing. In its shelter order, the juvenile court determined that it had "temporary emergency jurisdiction" over the children pursuant to ORS 109.751. The twin girls, Z and G, were placed with paternal relatives.

After a hearing on June 26, 2023, father admitted that his "behavioral health irregularities and lack of understanding and consistent attentiveness to meet the basic needs of the children interfere with his ability to safely parent the children." He also admitted that "[d]espite having

judicial notice of the contents of the juvenile court's order, including the court's findings and legal analysis.

[3] Under ORAP 2.22(2)(a), father was required to file an amended notice of appeal from the juvenile court's subsequent order rather than filing new appeals. Although we have authority to consolidate the appeals, ORAP 2.30, in the interest of resolving the issue pending before us expeditiously, we decline to do so.

been offered services to address his lifestyle instability, including lack of follow through to maintain safe and stable housing," he "has been unable or unwilling to remedy the problems, creating an ongoing risk of harm to the children." Based on the parents' admissions, the court entered a jurisdiction and disposition judgment. It stated that the juvenile court had "jurisdiction under the UCCJEA to make a child custody determination."

Although the initial plan for the family was reunification, almost a year later the juvenile court held a permanency hearing and, on May 22, 2024, the court changed the plans for Z and G to guardianship.

## ANALYSIS

On appeal, father's sole assignment of error is that the juvenile court lacked subject matter jurisdiction to enter the permanency judgments relating to Z and G. Father argues that the juvenile court initially had "temporary emergency jurisdiction" under the UCCJEA, and, on that basis, it could not enter permanency judgments. We conclude that, after the case commenced, the juvenile court acquired significant-connection jurisdiction, and therefore it had authority to enter the permanency judgments.

"We review for legal error the trial court's determination that it had subject matter jurisdiction under the UCCJEA." *Schwartz and Battini*, 289 Or App 332, 337, 410 P3d 319 (2017). "In the absence of findings, we presume that the court resolved factual disputes consistently with its conclusion." *Dept. of Human Services v. N. B.*, 261 Or App 466, 472, 323 P3d 479 (2014) (citing *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968)).

The UCCJEA "is a uniform act governing child custody proceedings and child custody determinations when multiple states are implicated." *Dept. of Human Services v. J. S.*, 368 Or 516, 523, 495 P3d 1245 (2021). Oregon adopted the UCCJEA in 1999 and it is codified at ORS 109.701 to 109.834. *Id*. Courts are required to "treat a foreign country as if it were a state of the United States for purposes of applying" the UCCJEA. ORS 109.714(1).

"Pursuant to ORS 109.741(1), a state may have initial custody jurisdiction under four non-emergency paths or one emergency exception." *Dept. of Human Services v. M. P.*, 328 Or App 502, 506, 537 P3d 593 (2023). An Oregon court has jurisdiction to make an initial child custody determination if Oregon is the child's home state. ORS 109.741(1)(a). "Home state" means "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." ORS 109.704(7). If Oregon is not the child's home state, there are three other pathways to jurisdiction under ORS 109.741, which have been described as "significant-connection," "more-appropriate-forum," and "last-resort" jurisdiction. *J. S.*, 368 Or at 525; *see* ORS 109.741(1)(b), (c), (d).

An Oregon court has significant-connection jurisdiction to make an initial child custody determination if a court of the home state has declined to exercise jurisdiction, the child and one parent have a "significant connection" to Oregon, and there is "substantial evidence" in Oregon about "the child's care, protection, training and personal relationships." ORS 109.741(1)(b). A juvenile court has temporary emergency jurisdiction to make a child custody determination if "the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." ORS 109.751(1). "Abandoned" means "left without provision for reasonable and necessary care or supervision." ORS 109.704(1). When a court has temporary emergency jurisdiction, it has authority to enter temporary orders, but not permanent or final ones. *J. S.*, 368 Or at 533.

Here, the initial shelter order indicates that the family came to the attention of ODHS "after they were deported from Finland and flown to Portland" on August 29, 2022. A day later, the juvenile court determined it had temporary emergency jurisdiction to make an initial custody determination. The juvenile court stated that its temporary emergency jurisdiction "shall continue for at least 90 days as the agency determines whether there is a custody order

in Finland." Finnish authorities had reported to ODHS that the parents were not meeting the children's physical needs, that the children were "malnourished and inadequately clothed," that their housing "was dirty and filthy," that the children had been diagnosed "with special needs including ADHD and Autistic Spectrum Disorder," and that father suffered from untreated schizophrenia. When "the child welfare agency in Finland attempted to remove the children from the parent's care, Father reportedly assaulted a peace officer *** with a sword and was arrested." The parents were detained in Finland and their flight back to Oregon in August 2022 "was the first time the parents had seen the children since February 2022."

That information was sufficient for the juvenile court to conclude that Z and G had been "abandoned" or were "threatened with mistreatment." ORS 109.751(1). Therefore, the juvenile court had temporary emergency jurisdiction to make a child custody determination at the shelter hearing on August 30, 2022.

Then, in June 2023, in its jurisdiction and disposition judgment, the juvenile court indicated that it had "jurisdiction under the UCCJEA to make a child custody determination." In April 2024, the juvenile court held a permanency hearing and changed the plans for Z and G from reunification to guardianship. In so doing, the juvenile court relied on exhibits that were received and admitted at the hearing without objection including a report submitted by the Court Appointed Special Advocate (CASA).

Although we do not have the full record of what occurred in Finland, we know from the CASA report that the children were taken into custody in Finland in June 2020, and they remained in the care of the Luna Family Center in Finland for over two years until August 2022, "when the entire family was deported back to Oregon." "Finnish authorities alerted Oregon authorities and the family was met at the airport by ODHS." There is no dispute that the children are citizens of the United States. We also know from the CASA report that a court in Finland decided to terminate custody of the children in September 2022.

Therefore, when the juvenile court concluded, in June 2023, that it had jurisdiction under the UCCJEA to make a child custody determination, we think it is reasonable to infer that the juvenile court meant significant-connection jurisdiction and that it relied on the Finnish court's decision to terminate custody of the children to conclude that the home state court "declined to exercise jurisdiction." *See* ORS 109.741(1)(b). In addition, the family had relatives in Oregon and prior involvement with ODHS, so the parents and the children had "a significant connection with" Oregon, and substantial evidence was available in Oregon concerning the children's "care, protection, training and personal relationships." *See id.* Therefore, by June 2023, the juvenile court had significant-connection jurisdiction, and, in May 2024, it had authority to change the permanency plans for G and Z from reunification to guardianship.

Affirmed.