38 April 1, 2026 No. 230

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Marriage of

Elizabeth A. SKAUG,
*Petitioner-Appellant,*
*and*

Brian Z. SKAUG,
*Respondent-Respondent.*

Deschutes County Circuit Court
20DR01955; A180893

Walter Randolph Miller, Jr., Judge.

Argued and submitted January 22, 2025.

Elizabeth A. Skaug argued the cause and filed the briefs *pro se.*

Peter Bunch argued the cause for respondent. Also on the brief was The Law Firm of Peter Bunch, LLC.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

In this child custody dispute, mother appeals an Order Appointing Parenting Coordinator (the PC order). Mother makes two arguments on appeal. First, mother argues that the court erred in determining that it had exclusive, continuing subject matter jurisdiction to modify the initial child-custody determination under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), codified at ORS 109.701 to 109.834. Second, mother argues that the trial court erred under ORS 19.270 when it issued the PC order while an appeal from the underlying dissolution of marriage judgment was pending. Father argues that the trial court retained subject matter jurisdiction under the UCCJEA and that, because the PC order enforced the provision of the dissolution judgment that required father to select a parenting coordinator, the trial court retained authority under ORS 19.270(1)(b) to enter the order while the judgment of dissolution was pending appeal.

For the reasons that follow, we have determined that the sole question we must answer to decide the outcome of this appeal is whether the PC order modified the parenting time provision of the dissolution judgment or, alternatively, enforced it. We must answer that question separately for both the UCCJEA and ORS 19.270. We conclude that, under both statutes, the order enforced the dissolution judgment and consequently affirm the trial court's order.

## I.   BACKGROUND FACTS

On January 30, 2020, mother filed a petition for dissolution of marriage in Deschutes County, where she and father lived with their children. After the petition was filed but before trial, father and children relocated to Washington, and mother relocated to California. A trial was held in early 2022, and the trial court entered a general judgment of dissolution, which included a child-custody determination and provision of parenting time. The trial court determined it had subject matter jurisdiction under the UCCJEA to make the custody determination, awarded custody to father, and explicitly allowed father to relocate with the children to Washington.

The dissolution judgment ordered father to select a parenting time coordinator (the coordinator). The coordinator, along with the children's therapist, was given considerable authority to help facilitate parenting time with mother within a framework provided by the dissolution judgment. According to the dissolution judgment, visits were first to be "for 4 hours *** in a public place" and then could "increase to 8 hours of supervised time when the children [were] able to cope reasonably well." At the next stage, "[p]arenting time would then move to unsupervised time for 8 hours and then to an overnight (noon to noon) every other weekend once [the coordinator] and the children's therapist determine[d] the children [were] ready for an overnight visit." Next, "[a]fter the children *** acclimated to *** overnight parenting time visits with Mother per the determination of [the coordinator] and children's therapist, the parenting time [would] expand to full weekend visits ***." Finally, parenting time would graduate to "expansion to holiday and Summer parenting time per the Deschutes County Basic Parenting Plan when [the coordinator] and children's therapist agree[d] the children [were] ready ***." Additionally, in the event of the children experiencing "an unmanageable level of anxiety, [the coordinator] would reduce the time back to the prior level until the [children's therapist] indicate[d] that the children ha[d] developed a plan for coping." Costs for the coordinator's services were to be shared evenly by both parents.

In a separate proceeding, mother appealed the general judgment of dissolution of marriage; we recently affirmed. *Skaug and Skaug*, 340 Or App 11, 569 P3d 1002 (2025). On appeal, the trial court's award of custody to father was at issue, but for reasons other than an asserted lack of subject matter jurisdiction under the UCCJEA.

On August 19, 2022, while the appeal of the dissolution judgment was still pending, mother moved the trial court to issue an order to show cause regarding "expedited enforcement of parenting time" pursuant to ORS 107.434. Following a hearing on the motion, the trial court found that, despite father's diligent efforts, there had been an unreasonable delay in the selection of a parenting coordinator and

ordered father to identify and hire a coordinator within 30 days.

Father moved for an order appointing a parenting time coordinator on November 22, 2022. Father included a proposed order with his motion. The proposed order included a fee arrangement that provided for a for-cause deviation from a baseline of even cost-sharing between the parents. In addition to that fee arrangement, the proposed order contained a provision that allowed the coordinator to "make recommendations and work to resolve conflicts between the Parties involving [issues designated in the order] that do not affect the Court's exclusive jurisdiction to determine fundamental issues of custody and parenting time." Mother objected to father's motion to appoint the coordinator. Following a hearing, the trial court adopted and entered father's proposed order.

Mother appeals the PC order, arguing that the trial court erred in issuing the order because the court lacked subject matter jurisdiction under the UCCJEA. Mother argues that the trial court lacked subject matter jurisdiction because, as of 2020, neither party nor the children "presently reside" in Oregon. Mother also argues that, under ORS 19.270(1)(b), the court erred in issuing the order because it substantially altered the rights of the parties while an appeal of the underlying dissolution of marriage judgment was pending. In support of her argument, mother argues that the order altered the cost-sharing provision of the initial custody determination and extended to the parenting coordinator more authority than the initial determination designated.

Father argues that the trial court properly established initial subject matter jurisdiction under the UCCJEA because the children and both parties lived in Oregon for more than sixth months prior to the commencement of the divorce proceedings. He further argues that the trial court maintains exclusive, continuing jurisdiction under the statute because neither Oregon nor any other state has made the determinations required to relinquish jurisdiction. Father argues that, pursuant to ORS 109.744(1)(a), the trial court implicitly found that "substantial evidence concerning

the children's care, protection, training, and personal relationships" remains in Oregon and that, therefore, the court retained jurisdiction. Father also maintains that the trial court did not err in issuing the order under ORS 19.270(1)(b) because the order was the result of mother's motion to enforce parenting time and the trial court retained limited jurisdiction to enforce the judgment of dissolution of marriage, including the requirement that father select a parenting time coordinator.

As previously stated, the outcome of this case turns on whether the PC order modified or enforced the initial custody determination as to the UCCJEA and, separately, as to ORS 19.270. As we will explain, whether subject matter jurisdiction is required under the UCCJEA depends on whether the trial court's order modifies or, rather, enforces the initial child-custody determination. Similarly, under ORS 19.270, the trial court retains limited jurisdiction to enforce—but not to modify—its judgment while an appeal of the judgment is pending. However, each statute contemplates distinct meanings of what constitutes a modification or an enforcement. Accordingly, we begin with a brief explanation of that distinction under the UCCJEA before determining whether the PC order modified or, rather, enforced the dissolution judgment pursuant to that statute. Then we consider the separate question of whether the order modified or enforced the dissolution judgment for purposes of ORS 19.270.

## II. PURPOSE AND STRUCTURE OF THE UCCJEA

The UCCJEA is "a uniform act governing child custody proceedings and child custody determinations when multiple states are implicated." *Dept. of Human Services v. J. S.*, 368 Or 516, 523, 495 P3d 1245 (2021). Nearly every state has adopted the UCCJEA, with Oregon doing so in 1999. Or Laws 1999, ch 649. Recently, we said that the UCCJEA "reflects a deliberate effort to prevent courts from treading on one another's jurisdiction, and to ensure that custody orders and dispositional orders will remain fully enforceable until a court determines they are not." *Dept. of Human Services v. J. A. G.*, 344 Or App 511, 524-25, 582 P3d 257 (2025). Toward this end, the UCCJEA establishes

jurisdictional requirements that help to avoid multiple, conflicting custody determinations between states, *e.g.*, ORS 109.741 to 109.751; promotes the cooperation of courts of different states to determine jurisdiction and ensure enforcement by providing opportunities for candid communication between the courts and between the courts and the parties, *e.g.*, ORS 109.731 to 109.737, ORS 109.757, and ORS 109.761; and, finally, provides for swift interstate enforcement mechanisms in the spirit of the guarantee that states will give full faith and credit to the custody determinations of other states, *e.g.*, ORS 109.744 to 109.827; *accord* 28 USC § 1738A(a) ("The appropriate authorities of every State shall enforce according to its terms *** any custody determination or visitation determination made *** by a court of another State.").

To achieve those goals, the UCCJEA distinguishes between actions to make or modify child-custody determinations, to which the UCCJEA's subject matter jurisdiction provisions apply, and actions to enforce such determinations, to which the subject matter jurisdiction provisions do not apply. *See, e.g.*, *Medill and Medill*, 179 Or App 630, 646, 40 P3d 1087 (2002) (stating that "a child custody determination does not include an order *enforcing* an existing custody determination") (emphasis in original).

A.   *Jurisdiction*

Article 2 of the UCCJEA (ORS 109.741 to 109.771) provides, among other procedural matters, that a court must establish subject matter jurisdiction to make an initial child-custody determination or to modify an existing one. ORS 109.717 (governing the effect of child custody determinations); ORS 109.741 to 109.771 (governing jurisdiction). A "child custody determination," under the UCCJEA, "means a judgment or other order of a court providing for the legal custody, physical custody, parenting time[,] or visitation with respect to a child" and "includes a permanent, temporary, initial[,] and modification order." ORS 109.704(3). However, "'child custody determination' *** does not include an order relating to child support or other monetary obligation of an individual." ORS 109.704(3). A "modification" means "a child custody determination that changes, replaces, supersedes[,]

or is otherwise made after a previous determination concerning the same child[.]" ORS 109.704(11).

In Oregon, UCCJEA subject matter jurisdiction to make an initial child custody determination is governed by ORS 109.741. In relevant part, ORS 109.741(1)(a) provides that an Oregon court has jurisdiction to make an initial child-custody determination if Oregon "is the home state of the child on the date of the commencement of the proceeding." Under the statute, "'[h]ome state' means the state in which a child lived with a parent *** for at least six consecutive months immediately before the commencement of a child custody proceeding." ORS 109.704(7). "'Child custody proceeding' means a proceeding in which legal custody, physical custody, parenting time[,] or visitation with respect to a child is an issue" and "includes a proceeding for divorce." ORS 109.704(4). "Child custody proceeding," however, "does not include a proceeding involving *** enforcement under ORS 109.774 to 109.827." *Id.* A proceeding commences upon "the filing of the first pleading in [the] proceeding." ORS 109.704(5).

Once a court has established subject matter jurisdiction and made an initial child custody determination, that court retains exclusive, continuing jurisdiction to modify the determination until (1) an Oregon court determines that the child "no longer has a significant connection to the state such that substantial evidence is no longer available to the court," or (2) an Oregon court or a court of another state "determines that the child does not presently reside in Oregon." *J. A. G.*, 344 Or App at 520 (adopting a totality of the circumstances approach to decide where the parties "presently reside") (emphasis and internal quotations omitted); ORS 109.744(1)(a) and (b). If the court loses exclusive, continuing jurisdiction because a court determines that one of the criteria of ORS 109.744(1) has been met, "an Oregon court may modify an earlier custody determination only if it has subject matter jurisdiction to make an initial custody determination under ORS 109.741." *Puhl and Axel*, 345 Or App 670, 677, ___ P3d ____ (2025); ORS 109.744(2). Finally, if an Oregon court has lost subject matter jurisdiction under ORS 109.744, it may continue to make modifications of the custody determination if the court of a state that *does* have

subject matter jurisdiction declines to exercise it and determines that the Oregon court is a more appropriate forum. ORS 109.741(1)(b)(A), (B); ORS 109.761(1).

B. *Enforcement*

Article 3 of the UCCJEA governs the enforcement, by any state, of lawfully made child-custody determinations. ORS 109.774 - 109.830. To enforce a child-custody determination, a court need not possess the subject matter jurisdiction required to make or modify a custody determination; to require courts to possess such jurisdiction would frustrate the purpose of ensuring interstate enforcement of existing custody determinations. *See Medill*, 179 Or App at 646-47; *accord* UCCJEA, Prefatory Note, 9 ULA 461, 464 (1997) (Under the UCCJEA, "[t]he scope of the enforcing court's inquiry is limited to the issue of whether the decree court had jurisdiction and complied with due process in rendering the original custody decree.").

Indeed, Oregon courts must "recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with [the UCCJEA] * * * and the determination has not been modified in accordance with [the UCCJEA]." ORS 109.781(1). The court "may utilize any remedy available under other law of this state to enforce a child custody determination" made by a court of a state that exercised lawful jurisdiction. ORS 109.781(2); *see also* UCCJEA, § 303 comment, 9 ULA at 546 ("Enforcement of custody determinations of issuing States is also required by federal law in the [Parental Kidnapping Prevention Act], 28 USC 1738A(a)," which provides that full faith and credit be given to child-custody determinations.). Similarly, in the absence of subject matter jurisdiction, an Oregon court "may issue a temporary order enforcing" the visitation or parenting time schedule of custody determinations. ORS 109.784; *see also* UCCJEA, § 304 comment, 9 ULA at 548 ("This section authorizes a court to issue a temporary order * * * to enforce visitation rights without violating the rules on nonmodification contained in [ORS 109.781][;] * * * requests for a permanent change in the visitation schedule must be addressed to

the court with exclusive, continuing jurisdiction under [ORS 109.744] or modification jurisdiction under [ORS 109.747].")

Taken together, the UCCJEA's structure, provisions, and commentary demonstrate that, to *enforce* a lawfully made custody determination, a court is not required to have the subject matter jurisdiction that is required to make initial child-custody determinations or to modify such determinations. *Accord Medill*, 179 Or App at 646-47.

### III.   APPLICATION

#### A.   *UCCJEA*

We turn now to the question of whether the PC order modified the custody determination, such that the trial court required subject matter jurisdiction under the UCCJEA to enter it, or, by contrast, enforced the custody determination, rendering such jurisdiction irrelevant.

Section 2 of the dissolution judgment, titled "Custody," awarded legal custody of the children to father. Subsection 2(a), titled "Parenting Time," provided parenting time to mother and established a graduated framework for the allocation of time, beginning with short, supervised visits and working toward longer, unsupervised visits. That subsection further required father to select a parenting time coordinator, with parties sharing equally in the cost of the coordinator's services. The coordinator, along with the children's therapist and other professionals, was given considerable authority by the court to manage parenting time within the allocation framework provided by the custody determination.

As we will describe further below, the PC order gives the coordinator considerable authority to make decisions binding upon the parties while providing opportunity for the parties to object to any such decisions and request a hearing from the court. The order begins with a baseline of a fifty-fifty cost-sharing arrangement, as provided in the custody determination, but allows the coordinator "to assess costs differently or disproportionately if, in her sole discretion, either of the parents is acting unreasonably or not in good faith, creates unnecessary problems in the resolution

of an issue, or in other ways unnecessarily utilizes a dispro-
portionate amount of the [coordinator's] time."

By providing the coordinator with discretion to
deviate from the fifty-fifty cost-sharing arrangement estab-
lished in the dissolution judgment, the order changes the
terms of the judgment. However, in *Medill*, we emphasized
that a "child custody determination" was a judgment or
order "*providing* for the legal custody, physical custody, par-
enting time, or visitation with respect to the parties' chil-
dren." 179 Or App at 646 (quoting ORS 109.704(3)) (emphasis
in original). We also highlighted that a "child custody deter-
mination," by its own definition, "does not include an order
relating to child support *or other monetary obligation of an
individual.*" *Id.* (emphasis added). We note now that a "modi-
fication" is, by its definition, a "child custody determination,"
ORS 109.704(11), and, therefore, also does not include orders
relating only to monetary obligations.

In *Medill*, we determined that the trial court could
not consider the father's motion to modify the initial deter-
mination that the mother was to have custody, nor his
motion to adjust the parenting plan, because both would
have required the court to have subject matter jurisdiction
under the UCCJEA, which it did not possess. *Medill*, 179 Or
App at 645. We did, however, conclude that the trial court
could address his motions to "terminate, modify, or sus-
pend" his child support payments and consider whether to
hold mother in contempt for violations of the custody deter-
mination and consider sanctions. *Id.* at 646-47. We reasoned
that the former requests sought new provisions of custody
and parenting time, making them modifications, while the
latter requests sought to change the father's financial obli-
gations included in the initial determination and sanction
the mother for failure to adhere to requirements of that
determination. *Id.* at 638-47.

The PC order in this case gives the coordinator
authority that is consistent with the initial custody determi-
nation and, though it allows for the cost-sharing provision to
be altered for cause, the order does not modify the allocation
of parenting time provided by the dissolution judgment. The
judgment tasked the coordinator with facilitating parenting

time by working with each parent and other professionals—including the children's therapist—to execute the provision of parenting time laid out in the custody determination. The coordinator was to *determine* when mother would be granted increased or decreased parenting time, as well as whether those visits would be supervised or unsupervised. The PC order, which allows the coordinator to make decisions that may bind the parties in the absence of an objection by one or both parties, does not give the coordinator any custody—or parenting-time—related authority beyond what was provided in the judgment. The PC order explicitly does not allow the coordinator to "[m]ake decisions that are in the Court's exclusive jurisdiction to determine fundamental issues of custody and parenting time," that is, the order does not give the coordinator authority to alter the parenting-time framework created by the custody determination. The fact that the order does allow for different financial obligations—it creates the possibility that the costs of the coordinator's service may be divided unevenly—does not turn the order into a child custody determination because the UCCJEA is not concerned with the financial obligations of the parties. The order in no way created a new or differing *provision* of parenting time than that provided by the dissolution judgment.

Based on our understanding of the purpose of the UCCJEA and its distinction between modification and enforcement actions, we conclude that the PC order enforces the custody determination and modifies parents' financial obligations. Therefore, the trial court did not need subject matter jurisdiction under the UCCJEA.[1]

## B.   *ORS 19.270*

Finally, we turn now to assess whether the trial court retained jurisdiction to enter the PC order under ORS

---

[1] We note that the UCCJEA provides trial courts assessing subject matter jurisdiction under the statute with ample opportunity to communicate with the courts of other states, as well as the parties, to determine where subject matter jurisdiction properly lies, as well as to decide which court is the most convenient forum for any modifications of custody determinations, given the circumstances of the particular case. *See* ORS 109.731 (governing communication regarding UCCJEA questions between Oregon courts and courts of other states); ORS 109.737 (governing cooperation between Oregon courts and courts of other states to resolve UCCJEA questions).

19.270(1)(b). Generally, with the exception of a statutorily delineated set of purposes, the trial court's jurisdiction gives way to the appellate court's upon the service and filing of a notice of appeal. ORS 19.270(1); ORS 19.275; ORS 107.105(4). However, one of the purposes for which trial courts retain jurisdiction while a judgment is pending appeal is "[e]nforcing the judgment, subject to any stay of the judgment." ORS 19.270(1)(b). Trial courts do not retain jurisdiction to permanently modify dissolution judgments that are pending appeal. ORS 19.270.[2]

In our view, for purposes of ORS 19.270, the PC order qualifies as enforcing, rather than modifying, the dissolution judgment. Mother filed a motion to show cause pursuant to ORS 107.434, which provides procedures for expedited parenting time enforcement. ORS 107.434(2) includes a list of actions that the legislature understands to constitute "enforcement" of a previous judgment in that context:

"(2) In addition to any other remedy the court may impose to enforce the provisions of a judgment relating to the parenting plan, the court may:

"(a)  Modify the provisions relating to the parenting plan by:

"(A)  Specifying a detailed parenting time schedule;

"(B)  Imposing additional terms and conditions on the existing parenting time schedule; or

"(C)  Ordering additional parenting time, in the best interests of the child, to compensate for wrongful deprivation of parenting time;

" * * * * *

"(e)  Terminate, suspend or modify spousal support; [or]

" * * * * *

"(g)  Schedule a hearing for modification of custody as provided in ORS 107.135 (11)."

---

[2] Trial courts may, while a judgment is pending appeal, make temporary modifications "provided for in ORS 107.095," ORS 107.105(4), or modifications in response to "any motion that requires a showing of a change of circumstances." ORS 19.275.

The PC order enforced the judgment within the meaning of ORS 19.270(1)(b). The appointment of the coordinator, and the entry of an order appointing one, was contemplated in the judgment; thus, the PC order enforced the judgment in those respects.

To the extent that the PC order modified the judgment by making it possible that the cost of the coordinator's services might be divided unevenly, we conclude that it "[m]odif[ied] the provisions relating to the parenting plan by" "[i]mposing additional terms and conditions on the existing parenting time schedule." ORS 107.434(2)(a)(B). The additional term provides that, if one of the parents "act[s] unreasonably or not in good faith, creates unnecessary problems in the resolution of an issue, or in other ways unnecessarily utilizes a disproportionate amount of the PC's time," then the coordinator has authority to impose an unequal distribution of costs. That term relates to the existing parenting time schedule and the coordinator's ability to modify that schedule, and its purpose is to provide a remedy for a parent's unnecessary utilization of the coordinator's time resolving disputes related to the schedule. Thus, it is an additional term imposed on the existing parenting time schedule. The legislature has indicated that a "modif[ication of] the terms related to the parenting plan" by adding such a term is a remedy "to enforce the provisions of a judgment relating to the parenting plan." ORS 107.434(2)(a). Accordingly, we conclude that the PC order "enforce[es] the judgment," ORS 19.270(1)(b), and that the court had jurisdiction to enter it while the dissolution judgment was on appeal.

Affirmed.